Commonwealth *v.* Gladfelter, Appellant.

Submitted March 11, 1974.   Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Glenn C. Vaughn,* Assistant Public Defender, for appellant.

*J. Christian Ness,* Assistant District Attorney, and *Morrison B. Williams,* First Assistant District Attorney, for Commonwealth, appellee.

Opinion by Hoffman, J., April 3, 1974:

This is an appeal from a judgment of sentence for aiding a prisoner to escape from the lawful custody of a police officer.[1]

On January 20, 1972, at approximately 1:00 p.m., an off-duty Hanover Borough police officer saw appellant driving an automobile with two passengers, Robert Dull and Charles Bechtel. On that morning, the police officer had seen a warrant for Dull's arrest, charging him with assault and battery. The officer stopped the car, identified himself to appellant, and informed him that there was a warrant out for Dull's arrest. The officer then went around to the passenger side of the car told Dull that he was under arrest, and ordered him out of the car. When Dull got out, he struck the officer and ran down the street. The officer pursued, but could not apprehend him.

A few minutes later, Jacob Bechtel, who observed the entire incident, saw Dull return to the vehicle, and re-enter it from the passenger side, immediately after

---

[1] "Whoever aids or assists any prisoner to escape or attempt to escape from the custody of any officer or other person having lawful charge of such prisoner, is guilty of a misdemeanor, and on conviction, shall be sentenced to pay a fine not exceeding five hundred dollars ($500), or to undergo imprisonment, by separate or solitary confinement at labor or simple imprisonment, not exceeding two (2) years, or both." 1939, June 24, P. L. 872, §316, 18 P.S. §4316.

which the car sped away. Three hours later, the police stopped the car and arrested the occupants. At that time, Dull was driving the automobile. From the facts outlined above, the jury could properly infer that appellant aided Dull's escape from the police officer.

Appellant first contends that Dull was not legally in the officer's custody because he did not possess the warrant at the time of arrest.[2] Appellant disputes neither the existence of the warrant nor the basis for its issuance, but contends that the officer must have the warrant in order to effectuate a legal arrest. While it is generally accepted that a police officer may not make a warrantless arrest for a misdemeanor not committed in his presence, see *Commonwealth v. Reeves,* 223 Pa. Superior Ct. 51, 297 A. 2d 142 (1973), there is no requirement that the arresting police officer actually have in his possession a warrant previously issued and present said warrant to the arrestee, especially where, as here, the arrestee flees the officer who attempts to make the lawful arrest.[3] Compare, *Whiteley v. Warden,* 401 U.S. 560, 568 (1971).

Appellant next contends that the court erred in admitting testimony concerning the existence of the arrest warrant. However, the terms and contents of the warrant were not in issue in the court below. Thus, the

---

[2] Since the Act (footnote 1) requires the prisoner to be in the lawful custody of the police officer, the lawfulness of the arrest is an element of the crime.

[3] There is some authority holding an arrest for a misdemeanor illegal where the arresting officer does not possess the warrant. See 6 C.J.S. Arrest 4(c). The rule is otherwise when the warrant is not directed to one police officer for its execution. *People v. Jeffries,* 31 Ill. 2d 597, 203 N.E. 2d 396 (1964). There is nothing to indicate that the warrant herein was so limited. Absent statutory or case law in Pennsylvania requiring physical possession of a validly issued warrant to effectuate a legal arrest, we decline to adopt a rule that would require copies of warrants to be issued to all police officers or allow only the police officer in possession of a warrant to make a legal arrest.

best evidence rule, upon which appellant relies, is not applicable to the facts of the instant case where the existence and not the terms of the warrant are in issue. *Commonwealth v. Gazal*, 185 Pa. Superior Ct. 91, 137 A. 2d 814 (1958); I Henry, Pennsylvania Evidence §282 (1953).

Appellant also argues that he is entitled to a new trial because the court did not follow the proper procedures for supplementing the trial transcript.[4] The transcript as originally lodged did not contain the jury's verdict. The trial judge immediately notified the stenographer and directed her to prepare and file a supplemental transcript setting forth the verdict. The transcript was subsequently filed and certified by the trial judge as part of the record. The accuracy of the transcript is not disputed: there is no question but that the jury returned a verdict of guilty, and that the supplemental transcript is a verbatim report of the occurrences at the time the jury rendered its verdict.

Appellant contends that the failure of the court below to follow the strict letter of the Act of 1911 entitled

---

[4] The Act of May 11, 1911, P. L. 279, §4, 12 P.S. §1199 provides: "When the evidence in any case is transcribed, it shall be the duty of the official stenographer to lodge the same with the prothonotary or clerk of the court, and notify the parties interested or their counsel that the same will be duly certified and filed, so as to become part of the record, if no objections be made thereto within fifteen days after such notice. If objections be made, the matter shall be heard by the court, and such order made regarding the same as shall be necessary in order to comport with the occurrences at the trial. If no objections be made, or when, after objection, the transcript shall have been so made to comport with the occurrences at the trial, said transcript shall be duly certified by the official stenographer and by the trial judge, shall be filed of record in the case, and shall be treated as official and part of said record for the purposes of review upon appeal, and shall be considered as prima facie accurate whenever thereafter offered in evidence in the same or any other proceeding, without the necessity of calling the stenographer as a witness to prove the same."

him to a new trial, despite the absence of prejudice or doubt as to the accuracy of the transcript. Specifically, appellant contends that the court erred in not affording him a hearing after the discovery of the omission from the record. In *Commonwealth v. Kulik,* 420 Pa. 111, 216 A. 2d 73 (1966), our Supreme Court held that a trial judge's ex parte alteration of a portion of the jury charge was reversible error, although it was not shown that the alteration was incorrect. There, the alteration was made after the appeal was filed, thus depriving the appellant of any opportunity to challenge the accuracy of the transcript. In the instant case, however, the trial court did not inject into the record personal recollection of trial occurrences. The court merely ordered a completion and not an alteration of the transcript as originally lodged. Had there been any basis for challenging the accuracy of the transcript, appellant could have done so in the court below, rather than asserting the lack of a hearing as grounds for reversal on appeal. We are satisfied that the integrity of the stenographer's transcript has been maintained, that there has been substantial compliance with the statute, and that appellant has not been prejudiced by any deviation therefrom.

Judgment of sentence affirmed.

PRICE, J., dissents.