J-E02007-21

2021 PA Super 229

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:       PENNSYLVANIA
:
v. :
:
:
:
CAL HEIDELBERG :
:
Appellant : No. 1342 WDA 2019

Appeal from the Judgment of Sentence Entered August 20, 2019
In the Court of Common Pleas of Erie County
Criminal Division at CP-25-CR-0002293-2018

BEFORE:  PANELLA, P.J., BENDER, P.J.E., BOWES, J., LAZARUS, J., OLSON,
J., DUBOW, J., KUNSELMAN, J., MURRAY, J., and McCAFFERY, J.

OPINION BY MURRAY, J.:                    **FILED: NOVEMBER 23, 2021**

Cal Heidelberg (Appellant) appeals *pro se* from the judgment of

sentence imposed after a jury found him guilty of four counts of possession of

a controlled substance, as well as one count each of firearms not to be carried

without a license, possession with intent to deliver a controlled substance,

possession of a small amount of marijuana, and possession of drug

paraphernalia.[1]  Appellant challenges the lawfulness of his arrest and the

denial of his motion to suppress contraband recovered from his vehicle

following the arrest.  After careful consideration, we affirm.

On August 11, 2018, Erie Police Department Corporal James Langdon

(Corporal Langdon), while on foot patrol, saw Appellant seated in the driver's

_____

[1] 35 P.S. § 780-113(a)(16); 18 Pa.C.S.A. § 6106(a)(1); 35 P.S. §§ 780-
113(a)(30), (31) and (32).

seat of a green BMW parked on West 19th Street. N.T. (suppression hearing), 1/28/19, at 8. Corporal Langdon was familiar with Appellant and his BMW from a prior drug arrest. *Id.* at 8-9, 15. Corporal Langdon radioed police dispatch and relayed Appellant's name and the license plate number of the vehicle to check for any active warrants for Appellant. *Id.* at 9. Dispatch checked the National Crime Information Center (NCIC) database[2] and informed Corporal Langdon that Appellant had an "active Erie County arrest warrant," and confirmed the BMW was registered to Appellant. *Id.*

As Corporal Langdon approached the BMW, Appellant exited the vehicle and walked to the front porch of his cousin's nearby house. *Id.* Corporal Langdon followed Appellant and asked him "to identify himself, which he did." *Id.* Corporal Langdon radioed the information to dispatch. *Id.* Dispatch "confirmed the warrant" and sent additional officers to the scene. *Id.*

Shortly thereafter, Corporal Curtis Waite (Corporal Waite) and Patrolman Daniel Post (Patrolman Post) arrived. *Id.* 21-22, 36. The officers placed Appellant under arrest; he was placed in handcuffs, walked to a police cruiser, and seated in the back. *Id.* at 10, 22, 36.

Corporal Langdon observed the BMW's "windows were down, [and] I believe [the] sunroof was open." *Id.* at 17. Appellant indicated to Corporal

---

[2] NCIC is a computerized database comprised of information (including names of individuals with active arrest warrants) available to federal, state, and local law enforcement.

Langdon that he did not want anyone to go near or touch his vehicle. *Id.* at 10. However, Corporal Waite and Patrolman Post had "already" approached the vehicle to secure it. *Id.* at 10, 43. Corporal Waite explained:

> We saw that his driver's side window was halfway down. It's our responsibility as police officers and it's in our policy that we are responsible for the vehicle, so we were going to secure the vehicle and make sure it was legally parked.

*Id.* at 37.

> On cross-examination, he reiterated:

> It's our responsibility to make sure your vehicle is secured. That way if it's not secured, if anybody does anything to your vehicle, takes anything out of your vehicle, we are responsible. You are in our custody, therefore, we are responsible for your vehicle. So we went to go secure your vehicle. Your window was halfway down and it was illegally parked.

*Id.* at 43.

Corporal Waite further testified, "on the driver's side driver's seat, we s[aw] a clear bag with suspected crack [cocaine] in it." *Id.* at 37. Corporal Waite opened the door and removed the bag. *Id.*; *see also id.* (stating "the door was open"). Corporal Waite also "saw, in plain view on the ash tray, there were two more bags of suspected crack cocaine." *Id.* After removing the suspected crack cocaine, the officers "secured the vehicle, and it was towed to the city garage." *Id.*

Patrolman Post's testimony was consistent with Corporal Waite's testimony. Patrolman Post stated, "we went to secure [Appellant's] 1997 green BMW, and as we walked over, the window was halfway down. In plain

view, you could see a bag of suspected crack on the driver's seat and two more bags of suspected crack in the cup holder." *Id.* at 22. Patrolman Post testified that after the officers removed the bags that appeared to contain crack cocaine, "we shut the car door, and we transported [Appellant] back to the station. We called for a tow for his vehicle so it could be towed to the city garage." *Id.* at 22-23.

At the same time, Corporal Waite and Patrolman Post applied for a warrant to search Appellant's vehicle. *Id.* at 23-24, 37-38. Corporal Waite completed an affidavit of probable cause.[3] A Magisterial District Judge approved and signed the search warrant the same day, and delivered the warrant to police by fax. *Id.* at 24, 38, 41. When the warrant was executed, police recovered additional crack cocaine, a small amount of marijuana, and drug paraphernalia. *Id.* at 25, 39. They also found a handgun. *Id.*

The Commonwealth charged Appellant with various drug and firearm offenses, and the trial court appointed counsel for Appellant. Appellant asked to proceed *pro se*. On October 30, 2018, following a *Grazier*[4] hearing, the court granted Appellant's request and appointed standby counsel.

---

[3] The search warrant and attached affidavit of probable cause was admitted as Commonwealth Exhibit 1. *Id.* at 24. The affidavit alleged probable cause based on the officers' plain view observations of suspected crack cocaine.

[4] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

On November 29, 2018, Appellant filed a *pro se* omnibus pretrial motion (OPT motion) and petition for writ of *habeas corpus*. The trial court denied the petition for writ of *habeas corpus*. In the OPT motion, Appellant argued, *inter alia*, that his arrest was unlawful and not supported by probable cause, and therefore, "all items which are obtained from this illegal search [must] be suppressed, [as being] fruits of a poisonous tree." OPT Motion, 11/29/18, at 2. The court held a suppression hearing at which Appellant, Corporal Langdon, Corporal Waite, and Patrolman Post testified. By order entered January 30, 2019, the court denied Appellant's motion to suppress, summarily finding: "[Appellant's] arrest, pursuant to an outstanding sheriff's warrant, and subsequent search of his vehicle, are legal," and "the [c]ourt finds that the evidence was obtained legally." Order, 1/30/19, at 1.

The case proceeded to trial, and a jury convicted Appellant of the aforementioned offenses. On August 20, 2019, the trial court sentenced Appellant to an aggregate 6 to 11 years' imprisonment, followed by 1 year of probation. Appellant did not file post-sentence motions.

Appellant timely filed a *pro se* notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement. The trial court issued a one page, two paragraph Rule 1925(a) opinion. Without addressing Appellant's "multiple reasons" for appealing, the court incorporated its January 30, 2019

order and recommended the appeal be dismissed.[5] Memorandum Opinion, 9/17/19.

Appellant presents four issues for our consideration:

1. Did the trial court abuse its discretion in denying Appellant's motion to suppress and that police had no grounds to detain or question Appellant where police believed that Appellant had a Sheriff's warrant for his arrest was based [*sic*] on false information, the fruits of the illegal arrest and search should have been suppressed as required by the Fourth Amendment of the United States Constitution and Article I Section 8 of the Pennsylvania Constitution?

2. Did the trial court abuse its discretion in denying Appellant's motion to suppress when the visual contact between Magistrate and Affiant required under Pa.R.Crim.P. 203(c), where the Affiant who sought the warrant via - advanced communication technology rather than in person was missing, given that the warrant was procured by telephone and/or fax only?

3. Did the trial court abuse its discretion in denying Appellant's Motion to Suppress where the actual search warrant, affidavit(s) and inventory of the items seized were never filed with the Cl[e]rk of Courts as required by Pa.R.Crim.P. 210?

4. Did the trial court abuse its discretion in denying Appellant's Motion to Suppress where the trial court did not consider the

_____

[5] The "Rules of Appellate Procedure make the filing of a 1925(a) opinion mandatory and the Rule 1925(a) opinion must set forth the reasons for the rulings of the trial judge or must specify in writing the place in the record where the reasons may be found." ***Commonwealth v. Hood***, 872 A.2d 175, 178 (Pa. Super. 2005). "It is incumbent upon a trial court to provide this Court with its Rule 1925(a) opinion addressing an appellant's issues, with citation to the record, to permit a meaningful and effective review of the issues raised and efficient use of judicial resources." ***Commonwealth v. Widger***, 237 A.3d 1151, 1165 n.5 (Pa. Super. 2020); ***but see also id.*** ("Although we do not approve of or sanction the trial court's failure to comply with its obligations under Rule 1925(a), the lack of a Rule 1925(a) opinion does not preclude this Court's review of the merits of [a]ppellant's issues based upon our review of the record, including the notes of testimony[.]").

cumulative effect of all the violations taken together, which would have been fatal to the warrant itself?

Appellant's Brief at ii (brackets omitted).

In reviewing these issues, it is well settled:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Bumbarger*, 231 A.3d 10, 15 (Pa. Super. 2020) (citation and ellipses omitted). Our scope of review is limited to the evidence presented at the suppression hearing. *Commonwealth v. Bellamy*, 252 A.3d 656, 663 (Pa. Super. 2021). With respect to a suppression court's factual findings, "it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented." *Commonwealth v. Caple*, 121 A.3d 511, 516-17 (Pa. Super. 2015) (citation omitted).

At a suppression hearing, "the Commonwealth has the burden of establishing by a preponderance of the evidence that the evidence was properly obtained." *Commonwealth v. Galendez*, 27 A.3d 1042, 1046 (Pa. Super. 2011) (*en banc*) (citation, quotation marks, and brackets omitted); *see also* Pa.R.Crim.P. 581(H) (at a suppression hearing, the Commonwealth

"shall have the burden . . . of establishing that the challenged evidence was not obtained in violation of the defendant's rights."). The preponderance of the evidence is "the lowest burden of proof in the administration of justice, and it is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly in one's favor." *Commonwealth v. Ortega*, 995 A.2d 879, 886 n.3 (Pa. Super. 2010).

Appellant first argues his arrest was unlawful (and the trial court abused its discretion in failing to suppress the contraband recovered from his vehicle) because the Commonwealth failed to prove the existence of a valid arrest warrant. Appellant's Brief at 10, 15. Appellant emphasizes the Commonwealth did not produce the arrest warrant at the suppression hearing, and asserts "there is nothing in the record that reflects proof positive an active Sheriff's warrant ever existed[.]" *Id.* at 12. Alternatively, Appellant contends that even if there was a valid arrest warrant, his arrest for the new charges with respect to the contraband in his vehicle was unlawful and unsupported by probable cause. *Id.* at 14-15.

The Commonwealth counters:

Given the circumstances, and the information provided to Corporal Langdon, the trial court had enough information to find Corporal Langdon properly relied upon dispatch's representation of information and that the information conveyed was from a reliable source. Thus, the arrest is proper, even though the Commonwealth did not produce the warrant.

Commonwealth Substitute Brief at 6-7.

- 8 -

A lawful arrest must be supported by probable cause. ***Commonwealth v. Smith***, 836 A.2d 5, 10 (Pa. 2003); ***see also Commonwealth v. Clark***, 735 A.2d 1248, 1251 (Pa. 1999) (describing circumstances whereby police may effectuate a warrantless arrest). In determining whether probable cause exists, we examine the totality of the circumstances. ***See Commonwealth v. Martin***, 101 A.3d 706, 721 (Pa. 2014). When an officer effectuates an unlawful arrest, "any evidence seized during a search incident to the arrest must be suppressed. Consequently, the propriety of a search depends upon the validity of the arrest." ***Clark***, 735 A.2d at 1251 (citation omitted). The remedy for illegal searches and seizures is exclusion of the evidence. ***Commonwealth v. Johnson***, 86 A.3d 182, 187 (Pa. 2014).

This Court recently examined a scenario similar to the one in this case in ***Bumbarger***, 231 A.3d at 10. A police officer, Trooper Murarik, was driving his police cruiser when he noticed a white Chevy Impala, driven by the appellant, pass in the opposite direction. ***Id.*** at 13. Trooper Murarik had previous experience with appellant, who was a known drug user, and knew he drove a white Chevy Impala. ***Id.*** Trooper Murarik and other officers were alerted to be on the lookout for a white Chevy Impala driven by appellant, as there was an outstanding warrant for his arrest. ***Id.*** at 13, 17. Trooper Murarik turned his cruiser around, began following appellant's vehicle, and ran appellant's registration number through NCIC. ***Id.*** at 16. NCIC indicated the white Impala was registered to appellant and there was an active warrant for

his arrest from the State of Colorado "with full extradition." *Id.* Trooper

Murarik stopped appellant's vehicle and confirmed appellant was the driver.

*Id.* He asked appellant to exit the vehicle and placed him in custody based

on the arrest warrant. *Id.* at 14. Trooper Murarik then approached the front

passenger side of the vehicle, where a woman was seated. *Id.* The woman,

a known drug user, appeared intoxicated. *Id.* Trooper Murarik asked her to

exit the vehicle. *Id.* When she exited, Trooper Murarik saw, in plain view,

two unsecured hypodermic syringes partway under the front passenger seat.

*Id.* Trooper Murarik then conducted a warrantless search of the vehicle and

found numerous narcotics as well as a handgun on the rear seat. *Id.*

The appellant in *Bumbarger* filed a pretrial motion to suppress,

asserting the contraband was the product of an unlawful arrest and search.

*Id.* at 13, 14. The appellant argued, *inter alia*, that the arrest warrant was

not valid, and thus Trooper Murarik lacked authority to stop and arrest him.

*Id.* at 15. Following the denial of appellant's suppression motion, and

conviction of drug and gun charges, appellant appealed. *Id.* at 14.

This Court upheld the denial of suppression, reasoning:

[T]here was no dispute that on April 1, 2018, N.C.I.C. alerted
Trooper Murarik to an outstanding, active arrest warrant for
appellant. Because of his prior involvement with appellant,
Trooper Murarik was familiar with appellant and his vehicle. The
driver of the vehicle resembled appellant. The registration
reflected that the white Chevy Impala was registered to appellant.
Thus, Trooper Murarik had probable cause to stop appellant's
vehicle and arrest appellant. As this Court has explained:

> We have previously held that the **information contained in a[n] N.C.I.C. report is so inherently reliable that such information is, *in and of itself*, sufficient to form the basis of a finding of probable cause** for a police officer who receives such information from an N.C.I.C. report to make an on the spot arrest.

*Commonwealth v. Cotton*, 740 A.2d 258, 264-65 (Pa. Super. 1999) [(emphasis added) (holding arresting officer's reliance on hearsay information gathered from NCIC report, broadcasted over police radio by dispatch, that appellant was wanted pursuant to two bench warrants was sufficient for probable cause to arrest)] (citing *Commonwealth v. Feflie*, 581 A.2d 636, 642 (Pa. Super. 1990)); *see also Commonwealth v. Bolton*, 831 A.2d 734, 736 (Pa. Super. 2003) ("This Court has consistently found that a report from the [N.C.I.C.] is sufficient to form reasonable and articulable grounds, *i.e.*, probable cause, that a crime is being committed or has been committed.") Thus, Trooper Murarik's stop and subsequent arrest of appellant on April 1, 2018, was lawful.

*Bumbarger*, 231 A.3d at 16 (citations modified); *see also id.* at 17 ("any argument that Trooper Murarik erred by 'assuming' that the warrant was valid and therefore lacked authority to stop [appellant] is meritless.").

We find *Bumbarger* analogous. Appellant points out that unlike this situation, where Corporal Langdon was on foot patrol and advised by radio dispatch of the NCIC information, the officer in *Bumbarger* personally used his police cruiser computer to check NCIC. *See* Appellant's Supplemental Brief at 1-2. The distinction is not meaningful. This Court has held:

> An arresting officer, in executing a valid arrest, *may rely upon radio broadcasts emanating from police facilities* provided, however, that the arresting officer has been either (1) ordered or directed to perform the arrest by an officer in possession of facts justifying the arrest; (2) **received information justifying arrest**; or (3) heard information which, coupled with facts he personally observed, provided probable cause to arrest.

*Commonwealth v. Evans*, 494 A.2d 383, 388 (Pa. Super. 1985) (emphasis added); *see also id.* (where arresting officer was informed by **radio dispatch** that an NCIC check revealed appellant's vehicle was stolen and used in a criminal act and occupants were armed, the information was sufficient **in and of itself** to justify the warrantless arrest of appellant). We have stated, "[t]he fact that [an] arrest was made by police officer who had knowledge of the arrest warrant, but did not have physical possession of it at time of arrest would not affect its validity." *Commonwealth v. Blakney*, 396 A.2d 5, 7 (Pa. Super. 1978) (citing *Commonwealth v. Gladfelter*, 324 A.2d 518, 519 (Pa. Super. 1974)).

Here, both Corporal Langdon and Corporal Waite testified that Erie police dispatch, a reliable source, confirmed the existence of an Erie County sheriff's warrant for Appellant's arrest. *See* N.T., 1/28/19, at 9, 36.[6] The suppression court credited this testimony, which we may not disturb, **regardless** of whether the arrest warrant was produced at the suppression hearing. *See Cotton*, 740 A.2d at 265 ("The suppression court found [the arresting officer's] testimony that he was relying on the N.C.I.C. report of the bench warrants[, relayed by the police dispatcher,] at the time of arrest, as

---

[6] Further, Appellant's identity was not in question. Appellant gave, *i.e.*, confirmed, his name and date of birth to Corporal Langdon, who was familiar with Appellant and his vehicle. *See* N.T., 1/28/19, at 9 (Corporal Langdon testifying he "informed dispatch that I had made contact with Cal. I asked Cal to identify himself, which he did[.]").

well as his testimony that the bench warrants themselves were valid, to be credible. Since **evaluating the credibility of the witnesses is the exclusive province of the factfinder in a suppression hearing**, we are compelled to affirm the suppression court's factual determination and conclude that it properly denied appellant's suppression motion." (emphasis added; citation omitted)); **see also id.** at 262 (noting "Commonwealth **did not produce the** [**bench**] **warrants** at [the] suppression hearing." (emphasis added)); **see also Bumbarger**, 231 A.3d at 15-16.

Although the Commonwealth did not produce absolute proof of the existence of the arrest warrant, we ascertain no abuse of the trial court's discretion in finding it was **more probable than not** that a valid warrant existed from the evidence adduced at the suppression hearing. **See Commonwealth v. Murray**, 225 A.3d 1162, at *7-8 (Pa. Super. 2019) (unpublished memorandum)[7] (employing similar language under similar facts); **but see also id.** at *8 n.4 (where arresting officer testified at suppression hearing that **another officer** (who did not testify at suppression hearing) verbally advised that NCIC database revealed there was an active warrant for defendant's arrest, and the suppression court "relied on [the

---

[7] Contrary to the Commonwealth's argument, citation to the non-precedential **Murray** decision is not improper. **See** Petition for *En Banc* Review, 9/25/20, at 1-2. The Rules of Appellate Procedure provide that non-precedential decisions of this Court filed after May 1, 2019 "may be cited for their persuasive value." Pa.R.A.P. 126(b); **see also Commonwealth v. Finnecy**, 249 A.3d 903, 910 n.9 (Pa. 2021). **Murray** was filed on December 16, 2019.

arresting officer's] testimony in conjunction with" the arrest warrant that the Commonwealth produced at suppression hearing, stating: "We do not suggest by our decision today that we would reach the same conclusion had the Commonwealth failed to produce a warrant at the suppression hearing[.]").

Based on the foregoing, we conclude the Commonwealth met its burden of proving by a preponderance of the evidence that a valid arrest warrant for Appellant existed. Thus, the suppression court properly found, under the totality of the circumstances, that the police officers had probable cause to arrest him.

We next consider whether the police lawfully obtained the contraband in Appellant's vehicle. "Both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Newsome*, 170 A.3d 1151, 1154 (Pa. Super. 2017). As a general rule, "a warrant stating probable cause is required before a police officer may search for or seize evidence." *Commonwealth v. Anderson*, 40 A.3d 1245, 1248 (Pa. Super. 2012). "Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." *Commonwealth v. Whitlock*, 69 A.3d 635, 637 (Pa. Super. 2013).

Notably, the Pennsylvania Supreme Court recently announced a new rule of criminal law mandating probable cause **and exigent circumstances**[8] for a warrantless search of an automobile. *See Commonwealth v. Alexander*, 243 A.3d 177, 181 (Pa. Dec. 22, 2020) (overruling *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014) (adopting federal "automobile exception" to the warrant requirement and holding police may conduct a warrantless vehicle search based **solely** on probable cause, with no exigency required beyond the inherent mobility of a motor vehicle)).

However, we have held that appellants are **not automatically** entitled to retroactive application of the *Alexander* decision (which was decided during the pendency of this appeal). *See Commonwealth v. Grooms*, 247 A.3d 31, 37 n.8 (Pa. Super. 2021). We explained:

> The decision in *Alexander, supra*, overruling *Gary*, announced a new criminal rule. When a United States Supreme Court decision "results in a 'new rule,' that rule applies to all criminal cases still pending on direct review." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)). "Case law is clear, however, that in order for a new rule of law to apply retroactively to a case pending on direct appeal, **the issue had to be preserved** at 'all stages of adjudication up

---

[8] "[T]here is no definition of exigency that will apply to all scenarios; however, the basic formulation of exigencies recognizes that in some circumstances the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Commonwealth v. Shaw*, 246 A.3d 879, 886 (Pa. Super. 2021) (citation omitted); *see also Commonwealth v. Lee*, 972 A.2d 1, 5 (Pa. Super. 2009) (Exigent circumstances may arise where "the need for prompt police action is imperative, either because the evidence sought to be preserved is likely to be destroyed or secreted from investigation, or because the officer must protect himself from danger[.]" (citation omitted)).

to and including the direct appeal.'" ***Commonwealth v. Tilley***, 780 A.2d 649, 652 (Pa. 2001) ([emphasis added;] citation omitted); ***see also Commonwealth v. Newman***, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*) ("To be entitled to retroactive application of a new constitutional rule, a defendant must have raised and preserved the issue in the court below."). Appellant here did not challenge the ***Gary*** automobile exception. Thus, to the extent relevant to the disposition of this appeal, and consistent with ***Tilley*** and ***Newman***, appellant cannot rely on ***Alexander*** to challenge the warrantless search of his vehicle.

***Grooms***, 247 A.3d at 37 n.8 (citations modified). Further:

Because appellant did not contest the application of the automobile exception announced in ***Gary***, which now has been overruled by ***Alexander***, he logically had no occasion to address whether exigent circumstances existed to justify the officers' judgment that obtaining a warrant was not reasonably practicable. Thus, because appellant did not raise the issue of exigency before the trial court or in his Rule 1925(b) statement, the issue is waived. ***See Commonwealth v. Hill***, 16 A.3d 484, 492 (Pa. 2011) (citing ***Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998)); Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); ***see also*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

***Grooms***, 247 A.3d at 37 n.9 (citations modified).

Here, as in ***Grooms***, Appellant did not preserve a challenge to the application of the automobile exception and the existence of exigent circumstances because he never raised the issue with the trial court or in his Pa.R.A.P. 1925(b) concise statement. Moreover, Appellant has not cited ***Alexander*** in his appellate briefs, which he filed months after ***Alexander*** was decided. Accordingly, we do not apply ***Alexander***. ***See Grooms***, 247 A.3d at 37 n.9; ***see also Commonwealth v. Aursby***, 2021 Pa. Super. Unpub.

- 16 -

LEXIS 1788, at *16, 2021 WL 2826473, at *6 (Pa. Super. July 7, 2021) (unpublished memorandum) (declining to apply **Alexander**, pursuant to **Grooms**, where appellant failed to raise and preserve the issue); **cf. Commonwealth v. Lowe**, 2021 Pa. Super. Unpub. LEXIS 2044, at *12-13, 2021 WL 3259388, at *5 (Pa. Super. July 30, 2021) (unpublished memorandum) (finding appellant "sufficiently preserved his challenge to the exigency requirement before the suppression court," and remanding for further proceedings where development of record was necessary to decide appellant's suppression claim in light of **Alexander**).

Next, we consider whether the initial search of Appellant's vehicle met an established exception to the warrant requirement. As described above, Corporal Waite and Patrolman Post walked to Appellant's nearby vehicle after Appellant was placed under arrest. **See** N.T., 1/28/19, at 22, 36. Their actions were based on Appellant being in custody and their responsibility for securing his vehicle. **See id.** at 36-37, 42-43. The driver's side window was down and the vehicle was parked illegally. **Id.** at 37, 43. The officers saw, in plain view, clear plastic bags containing suspected crack cocaine. **Id.** at 22 (Patrolman Post stating: "In plain view, you could see a bag of suspected crack on the driver's seat and two more bags of suspected crack in the cup holder." (emphasis added)); **id.** at 37 (Corporal Waite stating that in addition to seeing suspected crack cocaine on the driver's seat, he "saw, in plain view on the ash tray, there were two more bags of suspected crack cocaine." (emphasis

- 17 -

added)). The officers retrieved the bags in plain view and called for a tow truck. *Id.* at 22-23, 37.

The Commonwealth argues the "plain view" exception to the warrant requirement. *See Commonwealth v. McCree*, 924 A.2d 621, 627 (Pa. 2007); *see also* Petition for *En Banc* Review, 9/25/20, at 8-10. We have explained:

> The plain-view doctrine permits the warrantless seizure of an object when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object. There can be no reasonable expectation of privacy in an object that is in plain view. To judge whether the incriminating nature of an object was immediately apparent to the police officer, reviewing courts must consider the totality of the circumstances. In viewing the totality of the circumstances, the officer's training and experience should be considered.

*Bumbarger*, 231 A.3d at 19 (citations omitted); *see also Commonwealth v. Liddie*, 21 A.3d 229, 236 (Pa. Super. 2011) (*en banc*) ("An officer can never be one hundred percent certain that a substance in plain view is incriminating, but his belief must be supported by probable cause." (citation omitted)). Further, "inherent in the plain view doctrine is the principle the seized object must not have been put in plain view as a result of unlawful police conduct." *Commonwealth v. Jeffries*, 311 A.2d 914, 918 (Pa. 1973); *see also Texas v. Brown*, 460 U.S. 730, 737 (1983) (the "question of whether property in plain view of the police may be seized [] must turn on the legality of the intrusion that enables them to perceive and physically seize the property in question.").

We conclude the Commonwealth met the first requirement of the plain view test, as the officers viewed the bags that appeared to contain crack cocaine from a lawful vantage point. After they lawfully arrested Appellant, the officers acted reasonably to secure his vehicle, when they **plainly saw**, through the open driver's side window, clear bags of what appeared to be crack cocaine on the driver's seat and center console (the officers also determined the vehicle was parked illegally). Thus, Appellant lacked a reasonable expectation of privacy in the objects left in plain view.

Under the second plain view requirement, the incriminating nature of the clear bags was immediately apparent to the police. Corporal Waite, who had been a police officer for 15 years, unequivocally described seeing "a clear bag with suspected crack." **See** N.T., 1/28/19, at 35, 37. Patrolman Post corroborated Corporal Waite's testimony. **See id.** at 22. Also, Corporal Langdon testified to "knowing who" Appellant was because of "prior involvement with [Appellant] including an arrest of drugs during a traffic stop involving the same vehicle." **Id.** at 14-15. Under the totality of these circumstances, including the officers' experience and familiarity with Appellant's criminal history, the incriminating nature of the bags of cocaine was immediately apparent. **See**, **e.g.**, **Liddie**, 21 A.3d at 236 (incriminating nature of suspected crack cocaine police saw inside defendant's vehicle, by looking through a side window, was immediately apparent to arresting officer

under totality of circumstances, including officer's 21 years of police experience and familiarity with drugs).

Finally, turning to the third plain view requirement of "lawful right of access," "where police officers observe incriminating-looking contraband in plain view in a vehicle from a lawful vantage-point, the lack of advance notice and opportunity to obtain a warrant provides the officers with a lawful right of access to seize the object in question." **Commonwealth v. Miller**, 56 A.3d 424, 429 (Pa. Super. 2012) (quoting **Commonwealth v. Brown**, 23 A.3d 544, 557 (Pa. Super. 2011) (*en banc*)). Here, the officers had a lawful right of access to the vehicle where Appellant was under arrest, and in securing his vehicle, they had no advance notice and opportunity to obtain a warrant with respect to the bags they observed on the driver's seat and console of the vehicle. **See, e.g., Miller**, 56 A.3d at 430-31 (holding police officer's warrantless seizure of beer bottles from inside appellant's vehicle was lawful under plain view exception where incriminating nature of bottles was immediately apparent and officer lacked advance notice and an opportunity to obtain warrant before commencing search); **Bumbarger**, **supra**.

Also, even if the requirements of the plain view exception were not met, the bags of crack cocaine would have been lawfully — and inevitably — discovered during an inventory search of Appellant's vehicle. The "inevitable discovery" doctrine provides:

> Evidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence.

> Implicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality. Evidence is admissible under this doctrine where the Commonwealth demonstrates by a preponderance of the evidence that the illegally obtained evidence inevitably would have been discovered through lawful means.

*Anderson*, 40 A.3d at 1249 n.6 (citations, ellipses and brackets omitted).

Here, Appellant's vehicle was illegally parked on a city street and the driver's side window was down. *See* N.T., 1/28/19, at 22, 37, 43. The officers removed the clear bags in plain view, but then "shut the door" and "secured the vehicle"; they also "called for another officer [who] was going to stand by" until the tow truck arrived to take the vehicle to the city garage. *Id.* at 22-23, 37.[9] Under these circumstances, the impoundment of the vehicle at the city garage would have led to an inventory of the vehicle's contents. *See e.g., South Dakota v. Opperman*, 428 U.S. 364, 368-69 (1976) ("Police . . . frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge."); *accord Commonwealth v. Hennigan*, 753 A.2d 245, 255 (Pa. Super. 2000) (recognizing community

---

[9] Corporal Waite explained: "We called for another officer, I believe Officer Rhoades. He was going to stand by. Corporal Langdon was doing the [foot] patrol. We were going to take [Appellant] down to the police station[.]" N.T., 1/28/19, at 37.

- 21 -

caretaking function and explaining warrantless inventory searches of impounded vehicles).  Thus, police would have inevitably discovered the bags of crack cocaine.  ***See, e.g., Commonwealth v. Bailey***, 986 A.2d 860, 863 (Pa. Super. 2009) ("[B]ecause the police conduct routine inventory searches whenever a car is towed, and an inventory search includes looking into obvious storage places . . . the gun would have inevitably been discovered absent police error or misconduct."); ***see also Commonwealth v. Parker***, 248 A.3d 510 at *19-20 (Pa. Super. Jan. 27, 2021) (unpublished memorandum) (citing ***Bailey*** and applying inevitable discovery doctrine to hold that even if officer's warrantless search of appellant's vehicle was unlawful, the illegally obtained evidence inevitably would have been discovered by an inventory search pursuant to a lawful impoundment and towing of the vehicle); ***see also id.*** at *20 n.2 ("Similarly, to the extent that the officer's warrantless search could be viewed as not justified by an exigency under our Supreme Court's recent decision in ***Alexander***, 243 A.3d 177, because the car was to be impounded and towed, the evidence would have been inevitably discovered." (citation modified)).  Accordingly, the suppression court did not abuse its discretion.

In Appellant's second and third issues, which are related, he argues the search warrant was technically defective because the Commonwealth failed to comply with Rules of Criminal Procedure, and thus the contraband discovered during execution of the search warrant should have been suppressed.  ***See*** Appellant's Brief at 20-23.  In sum, Appellant contends the search warrant

was defective where the Commonwealth (a) obtained the warrant via fax, in violation of Criminal Rule 203,[10] *id.* at 20-21; (b) failed to submit an affidavit of probable cause in connection with the application for search warrant, *id.* at 21; and (c) the magisterial district judge did not file the search warrant and affidavit of probable cause with the clerk of court, in violation of Criminal Rule 210.[11]  *Id.* at 22-23.

---

[10] Rule 203 provides, in relevant part:

> (B) No search warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority in person or using advanced communication technology. The issuing authority, in determining whether probable cause has been established, may not consider any evidence outside the affidavits.

> (C) Immediately prior to submitting a search warrant application and affidavit to an issuing authority using advanced communication technology, the affiant must personally communicate with the issuing authority in person, by telephone, or by any device which allows for simultaneous audio-visual communication. During the communication, the issuing authority shall verify the identity of the affiant, and orally administer an oath to the affiant.  In any telephonic communication, if the issuing authority has a concern regarding the identity of the affiant, the issuing authority may require the affiant to communicate by a device allowing for two-way simultaneous audio-visual communication or may require the affiant to appear in person.

Pa.R.Crim.P. 203(B) & (C).

[11] Rule 210 states: "The judicial officer to whom the warrant was returned shall file the search warrant, all supporting affidavits, and the inventory with the clerk of the court of common pleas of the judicial district in which the property was seized."  Pa.R.Crim.P. 210.

The record does not support Appellant's claims. However, assuming, *arguendo*, that there was evidence of record to support Appellant's assertions that the warrant was technically defective, Appellant would not be entitled to relief because, as discussed above, the contraband would have been discovered during an inventory of the vehicle's contents when impounded. **See Bailey**, **supra**; **Parker**, **supra**. The Pennsylvania Supreme Court has instructed that suppression,

> is not an appropriate remedy for every violation of the Pennsylvania Rules of Criminal Procedure concerning searches and seizures. It is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad-faith or has substantially prejudiced the defendant that exclusion **may** be an appropriate remedy.

**Commonwealth v. Mason**, 490 A.2d 421, 426 (Pa. 1985) (emphasis in original). Here, even if the search warrant was technically defective, there is no indication that the Commonwealth acted in bad faith or Appellant was substantially prejudiced. Therefore, no relief is due.

In his final issue, Appellant argues the "cumulative" effect of the above errors "render both the illegal warrant and illegal arrest illegitimate." Appellant's Brief at 24. We disagree. As discussed, Appellant's first three issues are unavailing, and consequently his fourth issue lacks merit.

For the above reasons, we conclude Appellant's arrest was lawful and the contraband in his vehicle was lawfully obtained. Accordingly, the trial court did not abuse its discretion in denying suppression.

Judgment of sentence affirmed.

- 24 -

J-E02007-21

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  11/23/2021