**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SAQUANA TAWANE LAYER | : | No. 1489 MDA 2022 |

Appeal from the Order Entered October 13, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005925-2021

BEFORE:   BOWES, J., NICHOLS, J., and PELLEGRINI, J.[*]

DISSENTING MEMORANDUM BY BOWES, J.:   **FILED NOVEMBER 08, 2023**

Both of my esteemed colleagues agree that Layer's suppression motion was correctly granted because the officers' discovery of the contraband occurred outside the bounds of a legitimate protective sweep.  In the lead memorandum, Judge Pellegrini, standing alone, further opines that the police had no valid reason to conduct a protective sweep of the upper floor of the house in the first place.  I respectfully disagree with both positions.  I would hold that neither basis warranted suppression because the contraband was properly observed in plain view during a justified protective sweep.  Therefore, I dissent.

I begin by reiterating our standard of review.  If supported by the certified record, we are bound by a suppression court's findings of fact.  ***See***,

_____

[*] Retired Senior Judge assigned to the Superior Court.

*e.g.*, **Commonwealth v. Ross**, 297 A.3d 787, 791 (Pa.Super. 2023) (citation omitted). "The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts." *Id*. (citation omitted).

The facts found by the trial court relevant to the decision to conduct a protective sweep are supported by the certified record and are as follows. *See* Trial Court Opinion, 12/22/22, at 2-3, 6. When arriving to execute the arrest warrant for Hightower, the police were unsure of the number of people in the house because they had been unable to surveil the rear of the property. Suppression Hearing, 4/8/22, at 28. Initially, when the police knocked and announced their presence, they observed movement in an upstairs window. *Id*. at 7, 40. The officers encountered physical resistance at the front door while taking Hightower into custody and pushback from the other side of the door after Hightower was outside and handcuffed. *Id*. at 8-9, 40-41.

Even with Hightower secured, however, the police had an another ten to fifteen minutes of tasks to perform before finalizing the arrest and leaving with him. *Id*. at 10. Specifically, the arrestee had to be prepared for transportation, which involved addressing "shoes, shirts, phone numbers, medications, things of that nature." *Id*. In addition, the officers there were required to prepare a receipt inventory considering there was a warrant executed, which alone would take several minutes. *Id*. Accordingly, with any unknown occupants posing a potential safety threat to the officers while they remained on site, Officer Adam Nothstein and other officers entered the

residence to begin performing a protective sweep "immediately" after Hightower was cuffed. *Id*. at 43.

The lead memorandum, by maintaining that the sweep was not warranted on the ground that officers had secured the suspected occupants in the building, appears to oversimplify the arrest procedure and disregard the trial court's factual findings. Since the sustainable findings of the court amply demonstrate that the officers articulated "specific facts to justify a reasonable fear for the safety of [the] police officers," the subsequent sweep was legally justified. *Commonwealth Hall*, 199 A.3d 954, 95 (Pa.Super. 2018). Accordingly, I would not disturb the trial court's determination in this regard.

Likewise, I cannot agree with the combined Majority's alternative holding that even if the protective sweep of the second-floor bedroom was proper, Officer Fouad nonetheless exceeded the scope of the sweep at the time he observed the marijuana and packaging materials on the dresser. I believe that this rationale, which essentially adopts the trial court's basis for granting suppression, misapplies the law to the facts surrounding the execution of the sweep. I would find that suppression was not warranted because the marijuana and other contraband discovered on the dresser were properly observed by Officer Fouad in plain view.

It is well-settled that, since "[t]here can be no reasonable expectation of privacy in an object that is in plain view," there is no constitutional violation for "the warrantless seizure of an object when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the

object is incriminating; and (3) the officer has a lawful right of access to the object." *Commonwealth v. Heidelberg*, 267 A.3d 492, 504 (Pa.Super. 2022) (*en banc*) (cleaned up). "To judge whether the incriminating nature of an object was immediately apparent to the police officer, reviewing courts must consider the totality of the circumstances. In viewing the totality of the circumstances, the officer's training and experience should be considered." *Id*. (cleaned up).

In their discussion, my colleagues properly disregard the fact that the officer observed wads of cash in the top dresser drawer because the trial court determined that, as a matter of fact, the dresser was closed at the time of the sweep. *See* Lead Memorandum at 13-14; Concurring Memorandum at 2-3. However, they then proceed to state as follows:

> Officer Fouad also acknowledged that no one could hide behind the dresser because it was positioned against a wall, nor could anyone fit within the dresser drawers. Under these circumstances, we would conclude that a limited protective sweep of the second floor for hidden persons would not have led to police observation of tiny specks of suspected marijuana on top of a dresser.

Lead Memorandum at 14. By making this determination, I believe that the Majority either applies an improper and overly restrictive interpretation of the plain-view doctrine or disregards it entirely.

This Court has defined a protective sweep as "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Commonwealth v. Potts*, 73 A.3d 1275, 1282 (Pa.Super.

2013). Consistent with that purpose, we have stated that a search for persons "cannot be lengthy or unduly disruptive." ***Commonwealth v. Crouse***, 729 A.2d 588, 598 (Pa.Super. 1999). Nonetheless, an officer conducting this search is not required to avert his gaze from contraband visible from his lawful vantage point. ***See Commonwealth v. Potts***, 73 A.3d 1275, 1282 (Pa.Super. 2013) (concluding that "officers were not required to ignore the marijuana they saw in [the a]ppellant's bedroom while conducting [a protective] sweep").

Here, the door to the master bedroom could not be fully opened to be flush with the wall, as the dresser in question was behind it. ***See*** Defendant's Exhibit 6. Therefore, to ascertain whether someone was hiding in the corner of the room behind the door, Officer Fouad was required to partially close the door and look behind it. As he did so, the top of the dresser was immediately present before him, in plain view and close proximity. ***See*** N.T. Suppression Hearing, 4/8/22, at 81 (Officer Fouad testifying that the top of the dresser was about the same height as his shoulders). From his vantage point, without manipulation of any items, he was able to see loose marijuana, a box of sandwich bags, and a stack of resealable packets containing cartoon depictions of colorful anthropomorphic fruit with bloodshot eyes smoking marijuana cigarettes. The bundle of resealable packets sat on the corner of the dresser that was next to the hinge of the bedroom door, closest in point to where any reasonable officer would look to see if someone was hiding behind the door. ***See*** Defendant's Exhibit 4. The bits of marijuana leaf, while

not particularly large, appeared vibrant in color and were close to the other contraband in the center of the dresser. *See* Defendant's Exhibit 5.

From these uncontroverted facts, I cannot agree with my learned colleagues that Officer Fouad exceeded the scope of the sweep at the moment he observed these items. The evidence does not suggest that he engaged in any lengthy or disruptive search while preforming the sweep, nor is there any support for a contention that Officer Fouad's observations entailed closely looking at the dresser in a way that exceeded the scope of the protective sweep. Concerning the loose marijuana, while certain photographs of the dresser from a distance made it difficult to discern the specks, Officer Fouad was clear in his testimony that his point of view at the time of the sweep was not as far away as the perspective in most of the photos. *See* N.T. Suppression Hearing, 4/8/22, at 66. Additionally, while the Majority cursorily notes the small size of the marijuana leaves, it seemingly overlooks the readily apparent box of marijuana paraphernalia on top of the dresser inches away. The officer testified that based on his training experience, these other items found are used as "packaging for weed, for marijuana." *Id*. at 65.

To the extent the Majority's holding relies upon a finding that the officer was only permitted to scan the limited area behind the door without physically observing any items on top of the dresser, this is not the law. *See Potts*, *supra* at 1282. In my view, that interpretation of the plain-view doctrine would unreasonably require a police officer who sees drug-packing items in plain view on a bedroom dresser to close his eyes and disregard other

incriminating items nearby simply because it is smaller in size. I cannot condone such a restrictive interpretation.

Accordingly, I would hold that the Officer Fouad's observations of the contraband and marijuana on the dresser were proper under the plain-view doctrine and, consequently, the evidence obtained from execution of the search warrant was not excludable as fruit of the poisonous tree. Therefore, I believe the trial court erred in suppressing the items ultimately seized from the residence.

For all of the foregoing reasons, I respectfully dissent.