J-S47003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN CRUMBS | : | |
| | : | |
| Appellant | : | No. 780 EDA 2024 |

Appeal from the Judgment of Sentence Entered February 15, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0004048-2023

BEFORE:  KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED APRIL 23, 2025**

John Crumbs ("Crumbs") appeals from the judgment of sentence following his non-jury convictions of possession with intent to deliver ("PWID"), possession of a controlled substance, and possession of a firearm prohibited.[1]   After careful review, we affirm.

We take the underlying facts and procedural history from the  trial court opinion:

> On May 19, 2023, at approximately 4:40 p.m., Police Officer William Ferguson [("Officer Ferguson")] was conducting narcotics surveillance [around] 4000 Lancaster Avenue, a business district in West Philadelphia known for narcotics sales.  Shortly thereafter, he observed [Crumbs] engage in a brief hand[-]to[-]hand transaction with a woman later identified as Ishia Medley [("Ms. Medley")].  Ms. Medley gave [Crumbs] an unknown amount of U.S. currency and [Crumbs] handed her a small[,] unidentified object.  Ms. Medley departed and walked southbound through a

_____

[1]   35 P.S. §§ 780-113(a)(30), (16); 18 Pa.C.S.A. §§ 6105(a)(1).

parking lot as Officer Ferguson communicated with backup officers via radio communication. Police Officer James Reilly [("Officer Reilly")] continued the surveillance of Ms. Medley and followed her until she was stopped by Police Officer Flynn[2] [("Officer Flynn")] on the 600 block of N. 42nd Street. Recovered from Ms. Medley "was one yellow flip-top container, [that] contained an off-white chunky substance, alleged crack cocaine."

At approximately 5:00 p.m.[,] Officer Ferguson saw [Crumbs] walk southbound through the same parking lot and radioed Officer Reilly to resume surveillance. [Crumbs] continued to the 600 block of North Budd Street where he entered the driver's seat of a [s]ilver Pontiac Grand Prix. Officer Ferguson instructed backup officers to effectuate the arrest.

Police Officer Reilly testified he never lost sight of the buyer nor [Crumbs] during his surveillance. He further indicated [Crumbs] was the only individual he saw enter the Pontiac. Police Officer John Czapor [("Officer Czapor")] testified he was working in [a] uniformed capacity with his partner Officer Flynn as backup to Officer Ferguson when he received information to stop a target of a narcotics investigation. Upon arrival on the 600 block of North Budd Street, [Crumbs] was the sole occupant of a silver Pontiac Grand Prix sitting in the driver's seat. Officer Czapor removed him and immediately observed - in plain view - a firearm on the front passenger seat, later identified as a black Mac-11 subcompact machine gun with an extended magazine. A search of [Crumbs] recovered the following: $70 U.S. currency; one clear Ziplock bag holding 54 yellow flip-top containers - each containing an off[-]white chunky substance, alleged crack cocaine; and five clear and white Ziploc packets labeled "Express Mail" and four multicolored Ziplock packets, all containing a green leafy substance (alleged marijuana). Officer Ferguson determined the vehicle would be held for a search warrant.

Trial Court Opinion, 4/16/24, at 2-4 (record citations and footnote omitted, footnote added).

_____

[2] Officer Flynn's first name is not included in the certified record.

Crumbs filed a motion to suppress, and the trial court held a hearing in December 2023. During the hearing, Crumbs sought to admit a doorbell camera video ("the video") of the search of an unrelated vehicle which took place at the same location and by the same police officers immediately following his arrest. *See* N.T., 12/8/23, at 44-48. The Commonwealth objected on relevance grounds and the trial court sustained the objection. *See id*. At the conclusion of the hearing, Crumbs conceded there was not "sufficient grounds for [his] motion." *Id*. at 50. The trial court denied the motion to suppress, and the matter immediately proceeded to a bench trial. The trial court found Crumbs guilty of the above-cited offenses. Following receipt of a pre-sentence investigation report, the trial court sentenced Crumbs to eight to sixteen years in prison. This appeal followed.[3]

On appeal, Crumbs raises a single question for our review.

Where [Crumbs] was charged with selling drugs, with possession with intent to deliver ["PWID"] drugs found in a vehicle, and with possession of a firearm found in that vehicle, did not the [trial] court err and abuse its discretion by precluding, at the hearing on [Crumbs's] motion to suppress evidence, relevant defense evidence consisting of a video depicting the investigation and arrest of another suspect also alleged to have sold drugs and also alleged to have cached drugs in a car, which investigation and arrest involved the same officers as in [Crumbs's] case and occurred at the same location and time as the investigation and arrest of [Crumbs]?

Crumbs's Brief at 3.

_____

[3] Crumbs and the trial court complied with Pa.R.A.P. 1925.

Crumbs challenges the denial of his motion to suppress and the trial court's exclusion of the video. We begin by recognizing that our standard of review over the denial of a motion to suppress:

> is limited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error. In making this determination, this Court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Gindraw*, 297 A.3d 848, 851 (Pa. Super. 2023) (citation omitted, bracket removed). Further, our review is limited to the suppression hearing record. *In re L.J.*, 79 A.3d 1073, 1085 (Pa. 2013). "With respect to a suppression court's factual findings, it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented." *Commonwealth v. Heidelberg*, 267 A.3d 492, 499 (Pa. Super. 2021) (*en banc*) (citation and internal quotation marks omitted).

Our standard of review concerning the admissibility of evidence is equally settled.

> Our standard of review regarding the admissibility of evidence is an abuse of discretion. The admissibility of evidence is a matter addressed to the sound discretion of the trial court and . . . an appellate court may only reverse upon a showing that the trial court abused its discretion. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law.

- 4 -

*Commonwealth v. Collins*, 70 A.3d 1245, 1251–52 (Pa. Super. 2013)

(citations and quotation marks omitted).

> As a general rule, the threshold inquiry with admission of evidence is whether the evidence is relevant. Our rules of evidence state that "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Pennsylvania Rule of Evidence 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401.
>
> Further, this Court has provided that evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

*Commonwealth v. Fitzpatrick*, 316 A.3d 987, 995 (Pa. Super. 2024) (some

citations, brackets, and quotation marks omitted).

Crumbs argues the video, which is not in the certified record, was

relevant because it showed:

> [t]he actions of the police at the time and location of [Crumbs's] arrest. Specifically, in reference to counsel's offer of proof, counsel attempted to show, by way of video, that the police conducted a warrantless, unlawful search of another vehicle[] in the course of a narcotics investigation that occurred simultaneously with the one that led to [Crumbs's] arrest. Counsel asserted that the same officers as were involved in [Crumbs's] arrest, at the same time as [Crumbs's] arrest and at the same location as [Crumbs's] arrest, conducted an unlawful search of another car close by the vehicle which [Crumbs] was alleged to have entered and from which evidence was obtained . . . which was used against [Crumbs] at trial.

Crumbs's Brief at 12. Crumbs further complains the importance of this video

"should have been obvious to the trial court." *Id*. at 13.

The trial court explained:

[Crumbs] moved to suppress [all] evidence recovered prior to the execution of a search warrant on a [s]ilver Pontiac Grand Prix - PA License tag LYZ-0292. . . . [W]itness testimony specifically pertained to the surveillance of [Crumbs] and the vehicle in question. [Crumbs] sought to introduce evidence of a Ring camera video depicting the officers allegedly searching a different vehicle [after Crumbs's] arrest[.]

\* \* \* \* \*

The [trial c]ourt clarified the video [Crumbs] sought to present pertained to a search of a different vehicle and deemed this information irrelevant to the basis of the [m]otion - the search of the [s]ilver Pontiac. The fact that [Crumbs] was depicted in handcuffs with the officers on the Ring Camera record[ed] walking past another car after his removal from the Pontiac was not relevant to the issue raised in the [m]otion to [s]uppress. Hence, the [t]rial [c]ourt appropriately precluded this evidence for its lack of relevance to the grounds as stated by [Crumbs in] his [m]otion to [s]uppress. Of further note, [Crumbs] conceded the [m]otion to [s]uppress.

Trial Court Opinion, 4/16/24, at 8-9 (original emphasis, record citations omitted).

After a thorough review of the law and the record, we discern no abuse of discretion on the part of the trial court. While the relevance of the video may be "obvious" to Crumbs, it is not obvious to this Court.

The uncontradicted testimony at the suppression hearing showed that Officer Ferguson, an experienced police officer, was engaged in surveillance in a known drug area, when he observed Crumbs engage in a hand-to-hand transaction with Ms. Medley, wherein Ms. Medley gave him money and he gave her an unknown object. *See* N.T., 12/8/23, at 11-13. Officer Ferguson

contacted Officer Reilly, who stopped Ms. Medley and recovered a flip-top container containing alleged crack cocaine. *See id*. at 12-13. This was sufficient information to give the police probable cause to arrest Crumbs. *See* ***Commonwealth v. Williams***, 2 A.3d 611, 617 (Pa. Super. 2010) (*en banc*).

At Officer Ferguson's behest, Officer Reilly followed Crumbs and observed him get into the driver's seat of a silver Pontiac; Crumbs was the only individual in the vehicle. N.T., 12/8/23, at 36-37. Officers Ferguson and Reilly then instructed Officer Czapor to arrest Crumbs; as Officer Czapor removed Crumbs from the car, he observed, in plain view, a firearm and drug paraphernalia on the front passenger seat. *See id*. at 42. Officer Czapor did not search the car. *See id*. at 43. Officer Ferguson then secured a search warrant for the car.[4] *See id*. at 18-19.

As Crumbs concedes, *see* Crumbs's brief at 13 n.4, our Court has clearly and plainly held our Supreme Court's decision in ***Commonwealth v. Alexander***, 243 A.3d 177 (Pa. 2020) (holding that in order to search motor vehicles police must either obtain a warrant or show exigent circumstances), does not implicate the plain view doctrine. *See **Heidelberg***, 267 A.3d at 505; ***Commonwealth v. Davis***, 287 A.3d 467, 473-74 (Pa. Super. 2022) (affirming denial of suppression pursuant to the plain view doctrine where police during the process of an investigatory detention resulting from a motor

_____

[4] The search warrant is not included in the certified record.

vehicle stop, saw a gun from a lawful vantage point, its incriminating nature was immediately apparent, and the police had a lawful right of access). Crumbs did not argue below and does not argue on appeal that the Commonwealth did not meet the test for the plain view exception.

Given the above, this Court does not readily perceive the relevance of a video of a search of a car that was wholly unrelated to the arrest at issue. As the Commonwealth notes, *see* Commonwealth's Brief at 9, it is not apparent how the video, which did not depict the relevant events relating to Crumbs's arrest and/or the search of Crumbs's car, could demonstrate that search was warrantless, and Crumbs does not explain the basis for his conclusion. Moreover, again as discussed by the Commonwealth, *see id*. at 9-10, not all warrantless searches are illegal. Even assuming, *arguendo*, the search of the unrelated car was illegal, it would not prove that the search of Crumbs's car was unlawful. Crumbs provides no legal support for his contention the video was relevant or that a trial court may infer, simply because the same police officer might have participated in an unrelated illegal search, the search in the case before it was illegal, absent other evidence of illegality. Crumbs's claim does not merit relief. Accordingly, we affirm the denial of suppression.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>4/23/2025</u>