J-A01035-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| TRAI'VONE TYRIEK FERGUSON | : | |
| | : | |
| Appellee | : | No. 459 MDA 2021 |

Appeal from the Order Dated March 11, 2021
In the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0001326-2020

BEFORE:  LAZARUS, J., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: APRIL 12, 2022**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Berks County Court of Common Pleas, granting in part the suppression motion of Appellee, Trai'vone Tyriek Ferguson.  We affirm.

The suppression court provided the following findings of fact:

> 1.    On February 26, 2020, Pennsylvania State Trooper Ralph Vance … and Trooper [Eric] Dreisbach were on Interstate 78 West in Bethel Township, Berks County, Pennsylvania.  They were both in full uniform operating a marked patrol vehicle.
>
> 2.    Interstate 78 is a known drug corridor.
>
> 3.    While on patrol, the troopers observed a grey Nissan Sentra ("Sentra") being operated without Pennsylvania inspection or emission stickers.
>
> 4.    Trooper Dreisbach ran the vehicle's registration and discovered that the Sentra was a rental vehicle and owned by Avis.  Trooper Dreisbach found it unusual that the Sentra did not have its stickers displayed because rental

companies prefer to keep their vehicles up to date.

5. Trooper Dreisbach activated his lights and siren to initiate a traffic stop. The Sentra pulled off to the side of the road.

6. Trooper Dreisbach approached the Sentra on its passenger side and came into contact with Richard Lloyd Jones, III ("Jones"), and [Appellee]. Jones was the operator of the Sentra. [Appellee] was in the front passenger seat.

7. Trooper Dreisbach identified himself to Jones and [Appellee]. He asked Jones for his license, registration and proof of insurance.

8. Jones informed Trooper Dreisbach that the Sentra was a rental vehicle and provided him with his driver's license and rental paperwork.

9. While outside of the Sentra, Trooper Dreisbach observed ashes and an open energy drink in the center console. In Trooper Dreisbach's experience, drug traffickers use energy drinks to stay alert during their travels. Also, the presence of ash was concerning because people often do not smoke in rental vehicles.

10. There were several air fresheners present in the Sentra. In Trooper Dreisbach's experience, people will often use air fresheners to hide the odor of narcotics. He found it unusual that someone would put air fresheners into a rental vehicle since the vehicle would have to be returned at the conclusion of the rental period.

11. Neither Jones' nor [Appellee's] name was on the rental paperwork. Jones stated that his aunt rented the vehicle. The vehicle was rented in Charlottesville, Virginia.

12. Trooper Dreisbach asked Jones to step out of the vehicle to clear up the issues surrounding the rental agreement. In Trooper Dreisbach's experience, drug traffickers will operate vehicles rented to a third party to distance themselves from the vehicle in the event they are caught.

13.     In Trooper Dreisbach's opinion, Jones was not free to leave as he was outside of the Sentra speaking with Trooper Dreisbach.

14.     As Trooper Dreisbach was talking with Jones at the rear of the Sentra, he instructed Trooper Vance to talk to [Appellee] who was still seated in the vehicle.

15.     Jones informed Trooper Dreisbach that he was coming from Wilmington, New Jersey.  Trooper Dreisbach asked him if he meant Wilmington, Delaware.  Jones said that he was going to see a friend and [Appellee] came along with him on his trip.  They left from Charlottesville, Virginia, and then traveled to New Jersey before making their return trip to Charlottesville again all in one day.  Trooper Dreisbach testified that this was an indicator of criminal activity.

16.     Jones appeared to be nervous during the conversation with Trooper Dreisbach.

17.     Trooper Dreisbach talked to Trooper Vance about the conversation he had with [Appellee].  The information provided by [Appellee] about his trip was inconsistent with the information provided by Jones.  [Appellee] informed Trooper Vance that he was in Manhattan in New York City visiting a female friend for a week.  He got into an argument with her and was staying with his brother and their friends.  [Appellee] then contacted Jones to pick him up to return to Virginia.

18.     New York City is a source city for narcotics trafficking.

19.     [Appellee] appeared nervous during his conversation with Trooper Vance.  He appeared to be distracted by his phone and broke eye contact with Trooper Vance.

20.     Trooper Dreisbach asked Jones if there was anything illegal in the Sentra and for consent to search. Jones refused consent.

21.     Trooper Dreisbach instructed Trooper Vance to

contact a canine unit.

22. Trooper Dreisbach approached the Sentra and talked to [Appellee]. [Appellee] appeared nervous and looked as if he was about to cry.

23. Trooper Dreisbach asked [Appellee] if there was anything illegal in the Sentra. [Appellee] told Trooper Dreisbach that there was a marijuana joint in the center console. Based on his training and experience, Trooper Dreisbach testified that people will offer something small in order to distract from other parts of a vehicle. He also believed that Jones and [Appellee] were too nervous for just a marijuana joint.

24. Trooper Dreisbach seized the marijuana joint and asked [Appellee] to exit the Sentra. He was in possession of [Appellee's] driver's license at that time.

25. After [Appellee] exited the Sentra, Trooper Dreisbach informed both Jones and [Appellee] that he had probable cause to search the vehicle and canceled the canine unit.

26. Trooper Dreisbach proceeded to search the Sentra. Trooper Dreisbach looked inside of the Sentra's trunk. He observed a backpack and asked both Jones and [Appellee] if it belonged to them. They both denied ownership of the backpack.

27. Trooper Dreisbach opened the backpack and discovered a vacuum-sealed kilogram of an unknown substance. He told both Jones and [Appellee] to put their hands behind their backs. [Appellee] ran away.

28. Trooper Dreisbach pursued and apprehended [Appellee]. He was placed under arrest and searched. No contraband was discovered on [Appellee]. Additionally, the keys to the Sentra were not located on him. Jones was also searched incident to arrest with negative results.

29.      ***Miranda***[1] warnings were read to Jones and [Appellee].  They both agreed to speak to the troopers.  Jones admitted that they had traveled to New Jersey, picked up the backpack and were taking it to Virginia where they were going to get paid in product.  Jones indicated that he didn't believe [Appellee] knew the purpose of the trip but guessed that he probably could have figured it out.  However, upon additional questioning, Jones then said that he and [Appellee] both knew the purpose of their trip to obtain cocaine and get paid in product upon delivery.  [Appellee] provided a different story and said that he traveled to New York with his girlfriend where Jones picked him up and they were traveling to Virginia.  [Appellee] denied knowledge of the backpack in the trunk.

30.      Cellular phones were recovered from Jones and [Appellee].  [Appellee] provided written consent to search his phone.  Another state trooper, Trooper Fluck, went through [Appellee's] cellular phone and confronted [Appellee] with the messages.  The text messages referenced [Appellee] being a "middle man" in other drug sales.  [Appellee] said he dabbled in marijuana and cocaine.

31.      A search warrant was obtained for the cell phones.  Trooper Dreisbach was provided with the extracted data from the cell phones and observed all of the text messages.  The text messages show that there was a conversation between Jones and an unknown individual about drugs.  [Appellee] was not mentioned in that conversation.  There was another text conversation between Jones and [Appellee] about the trip from Virginia to the New York/New Jersey area with nothing specific about picking up drugs.

32.      The substance in the vacuum-sealed package located within the backpack tested positive for cocaine.

33.      The backpack also contained a pair of size 38 pants.  These pants would have been too big for [Appellee] who was listed as standing 5'6" and weighing 160 pounds.

34.      If Trooper Dreisbach had not searched the Sentra,

---

[1] ***Miranda v. Arizona***, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

he would have towed the vehicle. An inventory search would have been conducted prior to towing.

35.    The sole reason that the Sentra would have been towed was because neither Jones nor [Appellee] were listed on the rental agreement for the vehicle.

36.    Trooper Dreisbach did not attempt to contact the individual named in the rental agreement or the Avis rental company to learn more about the Sentra.

37.    There were no exigent circumstances present on February 26, 2020, during Trooper Dreisbach's interaction with [Appellee].

(Findings of Fact and Conclusions of Law, filed 3/11/21, at 2-6).

On June 24, 2020, the Commonwealth filed a criminal information charging Appellee with possession of a controlled substance, possession of a controlled substance with intent to deliver, possession of a small amount of marijuana, possession of drug paraphernalia, conspiracy, and resisting arrest.[2] Appellee filed an omnibus pretrial motion on August 7, 2020. The motion included a request to suppress all physical evidence found inside the trunk of the Sentra "because the Troopers conducted a warrantless search of the trunk … without probable cause and under no valid exception to the warrant requirement." (Suppression Motion, filed 8/7/20, at ¶3). Appellee further argued that the court needed to suppress the evidence obtained from his cell phone as "fruit of an illegal arrest and seizure." (*Id.* at ¶4).

---

[2] 35 P.S.§ 780-113(a)(16), (30), (31), (32), 18 Pa.C.S.A. §§ 903 and 5104 respectively.

The court conducted multiple hearings to receive evidence on the claims in Appellee's omnibus pretrial motion.[3] On January 13, 2021, the Commonwealth filed a motion to supplement the pretrial hearing record. Specifically, the Commonwealth acknowledged our Supreme Court's recent decision in **Commonwealth v. Alexander**, ___ Pa. ___, 243 A.3d 177 (2020), which eliminated the automobile exception to the warrant requirement in Pennsylvania. Due to this substantive change in the law, the Commonwealth requested the opportunity to introduce additional evidence in opposition to Appellee's suppression claims. After considering the Commonwealth's motion, the court conducted another hearing on February 12, 2021.

On March 11, 2021, the court issued findings of fact and conclusions of law. Initially, the court determined that the troopers possessed reasonable suspicion of criminal activity, which justified an extension of the original traffic stop. (**See** Findings of Fact and Conclusions of Law at 10). Appellee's subsequent admission regarding the presence of a marijuana joint in the Sentra's center console did not require suppression, because it was not the product of a custodial interrogation. (**Id.** at 12). According to the suppression court, Trooper Dreisbach subsequently conducted a warrantless search of the

---

[3] At a hearing conducted on November 10, 2020, Appellee entered the preliminary hearing transcripts into evidence. The parties agreed that the transcripts would be part of the record for purposes of Appellee's suppression claims. (**See** N.T. Pretrial Hearing, 11/10/20, at 4).

trunk based solely on his belief that probable cause supported the search. (*Id.* at 15). Pursuant to *Alexander*, the court concluded that both probable cause and exigent circumstances needed to be present for Trooper Dreisbach to search without obtaining a warrant. (*Id.*) The record did not reveal any exigent circumstances to support the warrantless search. (*Id.*)

To the extent the Commonwealth sought to rely on the inevitable discovery doctrine, the court found that "Trooper Dreisbach was not authorized by the Vehicle Code to tow the Sentra[,] … an inventory search would not have been performed and the drugs would not have been inevitably discovered." (*Id.* at 21). The court also found that the evidence obtained from Appellee's cell phone and the statements made following the illegal search were inadmissible as "fruit of the poisonous tree." (*Id.* at 22). Consequently, the court granted Appellee's suppression motion as to the drugs discovered in the trunk of the Sentra, the cell phone data, and any statements made following the search of the Sentra. The court denied the motion as to the marijuana joint and any statements made prior to the search of the Sentra.

The Commonwealth timely filed a notice of appeal on Monday, April 12, 2021, under Pa.R.A.P. 311(d).[4] On April 16, 2021, the court ordered the

_____

[4] *See* Pa.R.A.P. 311(d) (stating that in criminal case, Commonwealth may take appeal as of right from order that does not end entire case where Commonwealth certifies in notice of appeal that order will terminate or substantially handicap prosecution).

Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth timely filed its Rule 1925(b) statement on April 30, 2021.

The Commonwealth now raises two issues for this Court's review:

> Did the trial court err in suppressing evidence obtained as a result of a warrantless search of [Appellee's] vehicle based upon probable cause?

> Consequently, did the trial court err in suppressing cell phone evidence and statements made after the search as fruit of the poisonous tree?

(Commonwealth's Brief at 4).

The Commonwealth's claims are related, and we address them together. The Commonwealth acknowledges our Supreme Court's decision in **_Alexander_**, which held that the Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances to justify the warrantless search of an automobile. Nevertheless, the Commonwealth insists that an exception to the warrant requirement is present under the circumstances of this case. Relying on 75 Pa.C.S.A. §§ 3352(c)(4) and 3353(a)(2)(vii), the Commonwealth posits that the trooper had the authority to order the towing of the Sentra because it was parked on a "limited access highway." (**_Id._** at 16). The Commonwealth maintains that an inventory search would have occurred prior to towing, and the trooper's discovery of the contraband was inevitable.

- 9 -

The Commonwealth urges that "the doctrine of inevitable discovery permits the admission of the evidence obtained as a result of the warrantless search of the vehicle[.]" (*Id.* at 22). The Commonwealth recognizes that the exclusionary rule "generally excludes physical or testimonial evidence obtained as a direct and proximate result of unconstitutional conduct by police," but it contends that the inevitable discovery doctrine serves as an exception to the exclusionary rule. (*Id.*) The Commonwealth further argues that "[a]t the federal level, an exception to the exclusionary rule exists when police unknowingly violate the constitution while acting in 'good faith.'" (*Id.* at 26). The Commonwealth notes that "[o]ther states have incorporated this [good faith exception] into their jurisprudence," and this Court should adopt such an exception here, where "Trooper Dreisbach acted reasonably within the boundaries of the law [as it existed] at the time of the search[.]" (*Id.* at 31, 37). Based upon the foregoing, the Commonwealth concludes that we must remand this case for trial on all charges with all evidence.[5] We disagree.

"At a suppression hearing, 'the Commonwealth has the burden of establishing by a preponderance of the evidence that the evidence was properly obtained.'" ***Commonwealth v. Heidelberg***, 267 A.3d 492, 499 (Pa.Super. 2021) (*en banc*) (quoting ***Commonwealth v. Galendez***, 27 A.3d

---

[5] Because the Commonwealth opines that the warrantless search of the vehicle was lawful, it also believes that the court erred in suppressing Appellee's post-search statements and cell phone evidence as fruit of the poisonous tree. (***See*** Commonwealth's Brief at 37-38).

1042, 1046 (Pa.Super. 2011) (*en banc*)). When the Commonwealth appeals from a suppression order, the relevant scope and standard of review are well-settled:

> [We] consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

*Commonwealth v. Korn*, 139 A.3d 249, 252-53 (Pa.Super. 2016), *appeal denied*, 639 Pa. 157, 159 A.3d 933 (2016) (internal citations and quotation marks omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa.Super. 2003), *appeal denied*, 577 Pa. 701, 847 A.2d 58 (2004) (internal citations omitted).

"Both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Heidelberg, supra* at 502 (quoting *Commonwealth v. Newsome*, 170 A.3d 1151, 1154

(Pa.Super. 2017)). "As a general rule, 'a warrant stating probable cause is required before a police officer may search for or seize evidence.'" *Id.* (quoting *Commonwealth v. Anderson*, 40 A.3d 1245, 1248 (Pa.Super. 2012)). Regarding automobiles, "Article I, Section 8 affords greater protection to our citizens than the Fourth Amendment, and … the Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile." *Alexander, supra* at ____, 243 A.3d at 181.

"Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." *Heidelberg, supra* at 502 (quoting *Commonwealth v. Whitlock*, 69 A.3d 635, 637 (Pa.Super. 2013)). One of these exceptions to the warrant requirement is the inevitable discovery doctrine, which provides:

> [E]vidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence…. [I]mplicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality.
>
> If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible. The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct.

*Commonwealth v. King*, 259 A.3d 511, 522 (Pa.Super. 2021) (quoting *Commonwealth v. Bailey*, 986 A.2d 860, 862 (Pa.Super. 2009), *appeal denied*, 606 Pa. 660, 995 A.2d 350 (2010)).

- 12 -

Additionally, the Motor Vehicle Code permits police officers to order the towing of an automobile under the following circumstances:

**§ 3352.  Removal of vehicle by or at direction of police**

\*     \*     \*

**(c)  Removal to garage or place of safety.**—Any police officer may remove or cause to be removed to the place of business of the operator of a wrecker or to a nearby garage or other place of safety any vehicle found upon a highway under any of the following circumstances:

\*     \*     \*

(4)      The vehicle is in violation of section 3353 (relating to prohibitions in specified places) except for overtime parking.

75 Pa.C.S.A. § 3352(c)(4).  Section 3353 prohibits a vehicle from parking or standing "[o]n a limited access highway unless authorized by official traffic-control devices."  75 Pa.C.S.A. § 3353(a)(2)(vii).

Instantly, the suppression court analyzed **_Alexander_** and applied its holding to the facts of Appellee's case.  The court determined that Appellee's statement regarding the presence of a marijuana joint provided Trooper Dreisbach with probable cause to search the Sentra.  (**_See_** Findings of Fact and Conclusions of Law at 15).  "However, there was no testimony regarding the exigent circumstances that would have prevented Trooper Dreisbach from obtaining a search warrant."  (**_Id._**)

Regarding the Commonwealth's argument about the applicability of the inevitable discovery doctrine, the court noted that Trooper Dreisbach would

- 13 -

have had the Sentra towed if he had not performed a search while the vehicle was stopped on the side of the road. (*See id.* at 19). The court emphasized Trooper Dreisbach's statement "that the sole reason for towing the vehicle would have been because neither Jones nor [Appellee] were listed on the rental agreement." (*Id.*) Specifically, Trooper Dreisbach testified on this matter as follows:

> [DEFENSE COUNSEL]: You stated on direct examination that you would have towed the vehicle?
>
> [TROOPER]: Correct. Yes.
>
> [DEFENSE COUNSEL]: Are you saying you would have towed it because the driver was not on the rental agreement?
>
> [TROOPER]: Yes. So I would have towed it. Neither occupant was on the rental agreement, they're out of the state where it was rented from. I mean, like I explained during my testimony before, it's a liability for the rental company to have random people driving rental cars around.

(N.T. Suppression Hearing, 2/12/21, at 18). Although the trooper briefly mentioned that the Sentra was parked on the side of the interstate, he did not expressly testify that location of the vehicle provided him with a basis for towing it away from the scene. (*Id.* at 15, 18-20).

The court evaluated this testimony and the relevant portions of the Motor Vehicle Code concluding that "the operation of a rental vehicle by an individual not listed on a rental agreement is not a legal justification to tow a vehicle pursuant to … the Vehicle Code." (Findings of Fact and Conclusions of

- 14 -

Law at 21). Based upon the applicable standard of review, the suppression court properly applied the law to the facts. ***See Korn, supra***. Although the Commonwealth correctly observes that police are authorized to remove vehicles that are parked on limited access highways pursuant to Section 3353(a)(2)(vii), the record does not demonstrate that this aspect of the Motor Vehicle Code would have served as a catalyst for Trooper Dreisbach.

At the various suppression hearings, the Commonwealth failed to develop the record regarding alternative bases for the towing of the Sentra. The trooper's only stated basis for a tow—the lack of Appellee or Mr. Jones' name on the rental agreement—is not one of the statutorily enumerated circumstances that will justify law enforcement's removal of a vehicle. ***See*** 75 Pa.C.S.A. §§ 3352, 3353. Absent more, the Commonwealth did not establish that the illegally obtained evidence in the trunk of the Sentra ultimately or inevitably would have been discovered by lawful means. ***See King, supra***.

The Commonwealth now asks this Court to recognize an exception to the exclusionary rule, but "Article I, Section 8 of the Pennsylvania Constitution does not incorporate a 'good faith' exception to the exclusionary rule." ***Commonwealth v. Edmunds***, 526 Pa. 374, 411, 586 A.2d 887, 905-06 (1991). ***See also Commonwealth v. Johnson***, 624 Pa. 325, 86 A.3d 182 (2014) (declining to adopt good faith exception to exclusionary rule for purpose of admitting physical evidence seized by police incident to arrest

based solely on expired arrest warrant, even if arresting officer believed warrant was valid). Accordingly, we affirm the order granting in part Appellee's motion for suppression of the evidence obtained as a result of the illegal vehicle search.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2022