J-A01036-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ANTHONY JOSEPH DECARLO | : | |
| | : | |
| Appellee | : | No. 461 MDA 2021 |

Appeal from the Order Entered March 11, 2021
In the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0003501-2019

BEFORE:  LAZARUS, J., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED APRIL 20, 2022**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Berks County Court of Common Pleas, granting the second suppression motion of Appellee, Anthony Joseph DeCarlo.  We affirm.

The suppression court provided the following findings of fact:

> 1.      The traffic stop in this case occurred on August 7, 2019.  On that day, Trooper Hope was employed as a trooper with the Pennsylvania State Police in the bureau of criminal investigation.  He was assigned to the S.H.I.E.L.D. (Safe Highways Initiative through Effective Law Enforcement and Detection) unit which patrols Pennsylvania highways to disrupt the flow of criminal activity.
>
> 2.      Trooper Hope has 18 years of experience as a trooper with the Pennsylvania State Police.  He became part of a Pennsylvania State Police interdiction team in May of 2009 and then joined the S.H.I.E.L.D. unit in February of 2015.

*        *        *

3.        Trooper Hope testified that his training takes an "all crimes approach" targeting various types of criminal activity including human trafficking, credit card fraud, money laundering, retail theft, etc.

4.        On the above-referenced date, Trooper Hope was in an unmarked patrol vehicle on Route 78, Bethel Township, Berks County, Pennsylvania.  He was on stationary patrol monitoring westbound traffic when he observed a silver sedan, subsequently identified as a Kia Forte ("Kia"), pass his location.

5.        Trooper Hope observed that the Kia had a South Carolina registration and was occupied by one white male, subsequently identified as [Appellee].  Based on Trooper Hope's training and experience, the Kia appeared to be a rental vehicle.  Trooper Hope testified that, during his 10 years involved with highway interdiction, he has arrested around 200 people for possession with intent to deliver and at least 70% of those individuals were in rental vehicles.

6.        Trooper Hope followed the Kia and used a calibrated speedometer to clock the vehicle traveling at 70 miles per hour in a 60 miles per hour zone.  As Trooper Hope was following the Kia, it quickly decelerated to 60 miles per hour.  Trooper Hope testified that this was one of his pre-stop indicators of criminal activity.  He believed [Appellee] was aware of his presence when he decelerated.

7.        Trooper Hope observed that [Appellee] had his hand outside of the driver's side window and was tapping the top of the door/roof area.  It was a hot August day and Trooper Hope found this behavior to be unusual and believed it was a nervous reaction to his presence.

8.        At 13:24:42,[1] Trooper Hope initiated a traffic stop of the Kia by activating his lights and siren.  The Kia came to a complete stop on the right shoulder of I-78's westbound

---

[1] At Appellee's first suppression hearing, the Commonwealth submitted a DVD of the mobile video recording ("MVR") of Trooper Hope's encounter with Appellee.  (**See** N.T. First Suppression Hearing, 2/11/20, at 5).  Throughout its findings of fact, the court referred to the timestamps from the MVR.

lanes of traffic at 13:24:55.

9.      Trooper Hope opened the door to his patrol vehicle at 13:25:40 and approached the Kia on the passenger side. [Appellee] was the only occupant of the Kia.

10.      At 13:26:00, Trooper Hope had his first interaction with [Appellee] when he asked him how he was doing.[2]

*      *      *

11.      While Trooper Hope was talking with [Appellee] through the passenger side window, he observed that [Appellee] was holding one cellular telephone and an additional cellular telephone was near the gearshift. Trooper Hope testified that, in his experience, an individual's possession of multiple cellular phones is consistent with involvement in criminal activity. Drug traffickers often have one phone for personal use and another phone for conducting criminal activity. Over 90% of Trooper Hope's arrests of individuals for possession with intent to deliver have involved individuals with multiple cell phones.

12.      [During their conversation, Appellee admitted that he had rented the Kia. Trooper Hope then asked to see the rental agreement.] Trooper Hope testified that, in [his] experience, rental agreements are either in paper or electronic form. Paper rental contracts are used for infrequent renters. Electronic rental contracts are typically used for people who rent more often. He found it unusual that [Appellee] first attempted to provide a paper rental agreement and then offered to locate an electronic rental agreement on his phone. Although no rental agreement was provided,[3] Trooper Hope testified that there is no legal requirement that someone must have a rental agreement

_____

[2] Throughout its findings of fact, the court provided verbatim transcriptions of Trooper Hope's conversations with Appellee. These conversations do not impact our analysis of the issue on appeal, and we have omitted them.

[3] Later in the investigation, Trooper Hope confirmed that Appellee had rented the car from Avis, and the rental term had not expired at the time of the traffic stop. (*See* N.T. Second Suppression Hearing, 2/18/21, at 11-12).

while operating a rental vehicle.

13.     [During their conversation, Appellee stated that he was returning to North Carolina after a trip to New York]. Trooper Hope testified that New York is a source city for narcotics.

*     *     *

17.     After the initial conversation with [Appellee], Trooper Hope entered his patrol vehicle and closed the door at 13:29:06.

18.     While inside of his patrol vehicle, Trooper Hope learned that [Appellee's] driver's license was valid and that he was not a wanted individual.  Trooper Hope looked up [Appellee's] criminal history which revealed that [Appellee] was charged with two misdemeanor marijuana offenses in 2013, a marijuana and firearms charge in 2014 and an additional charge of possession with intent to deliver in 2014.  [Appellee] was sentenced to serve 18 months in prison on the possession with intent to deliver charge and was under supervised release in 2017.

19.     Before exiting his patrol vehicle, Trooper Hope prepared a warning for the speeding violation.

20.     At 13:39:32, Trooper Hope exited his patrol vehicle and went to the passenger side of the Kia.  The second cellular phone that he had previously observed near the gearshift was no longer visible.  Trooper Hope believed that [Appellee] may be involved in criminal activity.  Specifically, he believed [Appellee] may have been in possession of controlled substances with the intent to deliver them or laundering money.  Trooper Hope then asked [Appellee] if he could talk to him outside of the Kia.  [Appellee] exited the vehicle and walked to the back of the Kia.

21.     While standing with Trooper Hope between the front of Trooper Hope's patrol vehicle and the back of the Kia, [a] conversation took place[.  Trooper Hope asked Appellee whether there was contraband in the vehicle.  Appellee denied transporting any illegal items.  Trooper Hope asked for consent to conduct a pat down search, and

- 4 -

Appellee provided consent.]

22.     At 13:40:36, Trooper Hope patted down [Appellee] with negative results.

23.     Following the pat down of [Appellee], Trooper Hope continued … the … conversation[.  Trooper Hope asked for consent to search the vehicle, and Appellee did not provide consent.  Trooper Hope then indicated that he would be calling for a canine to sniff the exterior of the vehicle.]

24.     At 13:42:00, Trooper Hope's conversation with [Appellee] ended and he entered his patrol vehicle at 13:42:08.  [Appellee] continued to stand between the back of the Kia and front of Trooper Hope's patrol vehicle.

*     *     *

37.     At 14:21:21, Trooper Swope arrived on scene.  He had a brief conversation with [Appellee] about the canine search shortly after he arrived.

*     *     *

43.     Trooper Swope began the canine search at 14:27:05.  [Appellee] was outside of the patrol vehicle during the canine search.  The canine search ended at 14:28:54.

44.     During the canine search, Trooper Swope and Muso[, the canine,] moved left to right around the Kia.  As Muso reached the rear of the Kia, Muso stopped his left to right movement and turned his head towards the rear, driver's side portion of the Kia.  Trooper Swope testified he heard deep, audible nose breaths at the same time.  Trooper Swope took Muso around the Kia again and Muso alerted a second time on the rear, driver's side portion of the Kia along the seam of the trunk.  Muso also attempted to belly crawl under the Kia.  Trooper Swope testified that this is not typical behavior and that Muso was attempting to locate the source of the odor.

45.     At 14:29:30, Trooper Swope informed [Appellee] that the dog alerted to the back corner of the Kia near the

- 5 -

trunk area.

46.     At 14:30:32, Trooper Hope and Trooper Fleisher[, a back-up officer,] opened the trunk of the Kia and located 62 one-pound bags of vacuum sealed marijuana. [Appellee] was placed under arrest.

47.     The troopers searched the remainder of the Kia and located two bags, one containing $1,700.00 in U.S. currency and the other containing 20 marijuana vape pens.

(First Findings of Fact and Conclusions of Law, filed 4/23/20, at 2-18) (internal footnotes omitted).

On September 6, 2019, the Commonwealth filed a criminal information charging Appellee with two (2) counts each of possession of a controlled substance and possession of a controlled substance with intent to deliver.[4] Appellee filed his first suppression motion on October 7, 2019. In it, Appellee argued that the troopers "unconstitutionally prolonged [the] traffic stop without reasonable suspicion." (First Suppression Motion, filed 10/7/19, at 1). On February 11, 2020, the court conducted a suppression hearing. The court issued findings of facts and conclusions of law on April 23, 2020. In a separate order also entered on April 23, 2020, the court denied Appellee's first suppression motion.

On October 19, 2020, Appellee waived his right to a jury trial. That same day, at the conclusion of a stipulated bench trial, the court found Appellee guilty of one count of possession of a controlled substance with intent

_____

[4] 35 P.S.§ 780-113(a)(16), (30).

to deliver. The court scheduled Appellee's sentencing hearing for January 14, 2021.

Prior to sentencing, Appellee filed notice of his intention to make an oral motion for extraordinary relief pursuant to Pa.R.Crim.P. 704(B).[5] In the notice, Appellee indicated that he would "make an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial as a result of" our Supreme Court's recent decision in *Commonwealth v. Alexander*, ___ Pa. ___, 243 A.3d 177 (2020), which eliminated the automobile exception to the warrant requirement in Pennsylvania. (Notice, filed 1/4/21, at 1). On January 26, 2021, the court granted Appellee's request for extraordinary relief, vacated the guilty verdict, and ordered a new trial.

Appellee filed his second suppression motion on February 4, 2021. Relying on *Alexander*, Appellee argued that the trooper conducted an illegal, warrantless search of the vehicle's trunk and passenger compartment. Appellee maintained that "[n]o exigent circumstances, which would legally excuse the lack of such a search warrant, were present" before or during the search. (Second Suppression Motion, filed 2/4/21, at 4). The court conducted another suppression hearing on February 18, 2021. At that time, the

---

[5] "Under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral motion in arrest of judgment, for a judgment of acquittal, or for a new trial." Pa.R.Crim.P. 704(B)(1). "The judge shall decide a motion for extraordinary relief before imposing sentence, and shall not delay the sentencing proceeding in order to decide it." Pa.R.Crim.P. 704(B)(2).

Commonwealth presented additional testimony from Trooper Hope to oppose Appellee's claims.

On March 11, 2021, the court issued a second set of findings of fact and conclusions of law.[6]  The court noted that Trooper Hope did not obtain a search warrant for the Kia.  (**See** Second Findings of Fact and Conclusions of Law, filed 3/11/21, at 2).  Pursuant to **Alexander**, the court concluded that both probable cause and exigent circumstances needed to be present for Trooper Hope to search without obtaining a warrant.  (**Id.** at 4).  According to the court, the record did not reveal any exigent circumstances to support the warrantless search.  (**Id.** at 5).  To the extent the Commonwealth sought to rely on the inevitable discovery doctrine, "Trooper Hope testified that he would have obtained a search warrant for the Kia if the traffic stop had happened after the **Alexander** decision."  (**Id.** at 9).  Nevertheless, the court found that "an assertion that Trooper Hope could have obtained a warrant will not satisfy the inevitable discovery doctrine."  (**Id.**)  Consequently, the court granted Appellee's second suppression motion.

The Commonwealth timely filed a notice of appeal on Monday, April 12,

_____

[6] The second set of findings of fact and conclusions of law "incorporate[d] by reference [the court's] findings of fact contained within its findings of fact and conclusions of law" from April 23, 2020.  (Second Findings of Fact and Conclusions of Law, filed 3/11/21, at 2).

- 8 -

2021, under Pa.R.A.P. 311(d).[7]  On April 16, 2021, the court ordered the Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  The Commonwealth timely filed its Rule 1925(b) statement on April 30, 2021.

The Commonwealth now raises one issue for this Court's review:

> Did the trial court err in suppressing evidence obtained as a result of a warrantless search of [Appellee's] vehicle based upon probable cause?

(Commonwealth's Brief at 4).

On appeal, the Commonwealth acknowledges our Supreme Court's decision in *Alexander*, which held that the Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances to justify the warrantless search of an automobile.  Nevertheless, the Commonwealth insists that an exception to the warrant requirement is present under the circumstances of this case.  The Commonwealth contends that "the search of [Appellee's] vehicle was properly performed pursuant to [*Commonwealth v. Gary*, 625 Pa. 183, 91 A.3d 102 (2014)], which was the binding precedent at that time."  (*Id.* at 22).  "Trooper Hope was clearly aware of the proper procedure for obtaining warrants, as he testified that if *Alexander* existed at the time of this traffic stop, the vehicle would have been towed back to the

_____

[7] *See* Pa.R.A.P. 311(d) (stating that in criminal case, Commonwealth may take appeal as of right from order that does not end entire case where Commonwealth certifies in notice of appeal that order will terminate or substantially handicap prosecution).

- 9 -

station and secured pending the warrant application." (*Id.*) Under these circumstances, the Commonwealth asserts that the trooper's discovery of the contraband was inevitable.

The Commonwealth urges that "the inevitable discovery doctrine permits the admission of the evidence discovered during the search of [Appellee's] vehicle." (*Id.* at 18). The Commonwealth recognizes that the exclusionary rule "generally excludes physical or testimonial evidence obtained as a direct and proximate result of unconstitutional conduct by police," but it contends that the inevitable discovery doctrine serves as an exception to the exclusionary rule. (*Id.* at 14). The Commonwealth further argues that "[a]t the federal level, an exception to the exclusionary rule exists when police unknowingly violate the constitution while acting in 'good faith.'" (*Id.* at 23). The Commonwealth notes that "[o]ther states have incorporated this [good faith exception] into their jurisprudence," and this Court should adopt such an exception here, where "Trooper Hope acted in accordance with the law at the time of the search." (*Id.* at 27, 32). Based upon the foregoing, the Commonwealth concludes that we must remand this case for trial on all charges with all evidence. We disagree.

"At a suppression hearing, 'the Commonwealth has the burden of establishing by a preponderance of the evidence that the evidence was properly obtained.'" ***Commonwealth v. Heidelberg***, 267 A.3d 492, 499 (Pa.Super. 2021) (*en banc*) (quoting ***Commonwealth v. Galendez***, 27 A.3d

- 10 -

1042, 1046 (Pa.Super. 2011) (*en banc*)). When the Commonwealth appeals from a suppression order, the relevant scope and standard of review are well-settled:

> [We] consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

***Commonwealth v. Korn***, 139 A.3d 249, 252-53 (Pa.Super. 2016), *appeal denied*, 639 Pa. 157, 159 A.3d 933 (2016) (internal citations and quotation marks omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa.Super. 2003), *appeal denied*, 577 Pa. 701, 847 A.2d 58 (2004) (internal citations omitted).

"Both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." ***Heidelberg, supra*** at 502 (quoting ***Commonwealth v. Newsome***, 170 A.3d 1151, 1154

(Pa.Super. 2017)). "As a general rule, 'a warrant stating probable cause is required before a police officer may search for or seize evidence.'" *Id.* (quoting *Commonwealth v. Anderson*, 40 A.3d 1245, 1248 (Pa.Super. 2012)). Regarding automobiles, "Article I, Section 8 affords greater protection to our citizens than the Fourth Amendment, and … the Pennsylvania Constitution requires both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile." *Alexander, supra* at ___, 243 A.3d at 181.

"Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." *Heidelberg, supra* at 502 (quoting *Commonwealth v. Whitlock*, 69 A.3d 635, 637 (Pa.Super. 2013)). One of these exceptions to the warrant requirement is the inevitable discovery doctrine, which provides:

> [E]vidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence…. [I]mplicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality.
>
> If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible. The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct.

*Commonwealth v. King*, 259 A.3d 511, 522 (Pa.Super. 2021) (quoting *Commonwealth v. Bailey*, 986 A.2d 860, 862 (Pa.Super. 2009), *appeal denied*, 606 Pa. 660, 995 A.2d 350 (2010)).

"[T]he inevitable discovery doctrine is not a substitute for the warrant requirement. Police must demonstrate that the evidence **would** have been discovered absent the police misconduct, not simply that they somehow **could** have lawfully discovered it." *Commonwealth v. Perel*, 107 A.3d 185, 196 (Pa.Super. 2014), *appeal denied*, 633 Pa. 749, 124 A.3d 309 (2015) (emphasis in original). "To hold that courts simply may make a post-hoc determination that sufficient probable cause existed at the time of an otherwise illegal search would be to eliminate the key safeguard that 'delineat[es] the dignity of the individual living in a free society.'" *Id.* (quoting *Commonwealth v. Edmunds*, 526 Pa. 374, 398, 586 A.2d 887, 899 (1991)).

Instantly, Trooper Hope testified at Appellee's second suppression hearing. The trooper confirmed that he did not obtain a warrant before searching Appellee's vehicle. (**See** N.T. Second Suppression Hearing at 10). Trooper Hope explained, "From 2014 until late in 2020, we just did probable cause searches of vehicles on the side of the road. Whether it was me seeing or smelling some type of drugs or drug paraphernalia, I would do a probable cause search." (*Id.* at 9-10). The trooper added that if this stop had occurred today, he would have obtained a warrant. (*Id.* at 10).

Following Trooper Hope's testimony, the court received argument from the Commonwealth. At that time, the Assistant District Attorney admitted that he was not making an argument regarding the existence of exigent circumstances. (*Id.* at 17). Rather, he attempted to apply the inevitable

discovery doctrine to the facts of the instant case:

> My argument, Your Honor, really is that in this case this is really an alternative basis kind of argument, and I understand—I see that in Pennsylvania that there is no good faith exception.
>
> But the argument is, Your Honor, that it is really inevitable discovery. I think based on the [c]ourt's findings of what we had before, and there's ample testimony and ample evidence that's in your decision from the [first suppression motion], was certainly that, you know, the dog sniff, you had determined on that. I would argue that I don't think there's a question that that would create [probable cause], and that he could have got a warrant had the laws perhaps been different.

(*Id.* at 18).

The court subsequently rejected this argument:

> [A]s set forth in *Perel*, an assertion that Trooper Hope could have obtained a warrant will not satisfy the inevitable discovery doctrine.
>
> \* \* \*
>
> At the time of Trooper Hope's search of the Kia, the *Gary* standard was in effect. Trooper Hope acted in accordance with applicable law when he performed a warrantless search of the Kia based solely on probable cause. However, [Appellee] is entitled to the benefit from the change in law pursuant to *Alexander, supra*. *See Commonwealth v. Gaston*, 239 A.3d 135, 140 (Pa.Super. 2020)[.]

(Second Findings of Fact and Conclusions of Law at 9).

Based upon the applicable standard of review, the suppression court properly applied the law to the facts. *See Korn, supra*. We emphasize that the Commonwealth's argument in favor of applying the inevitable discovery doctrine—that Trooper Hope **could** have lawfully discovered the contraband if

- 14 -

he had applied for a warrant—is exactly the type of argument that this Court disapproved of in **Perel**. Absent more, the Commonwealth did not establish that the illegally obtained evidence in the trunk of the Kia ultimately or inevitably would have been discovered by lawful means. **See King, supra**.

The Commonwealth now asks this Court to recognize an exception to the exclusionary rule, but "Article I, Section 8 of the Pennsylvania Constitution does not incorporate a 'good faith' exception to the exclusionary rule." **Edmunds, supra** at 411, 586 A.2d at 905-06. **See also Commonwealth v. Johnson**, 624 Pa. 325, 86 A.3d 182 (2014) (declining to adopt good faith exception to exclusionary rule for purpose of admitting physical evidence seized by police incident to arrest based solely on expired arrest warrant, even if arresting officer believed warrant was valid). Accordingly, we affirm the order granting Appellee's second motion for suppression of the evidence obtained as a result of the illegal vehicle search.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/20/2022