J-A22035-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TOMA MARTIN | : | |
| | : | |
| Appellant | : | No. 1530 WDA 2021 |

Appeal from the Judgment of Sentence Entered November 30, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0002196-2020

BEFORE:   OLSON, J., DUBOW, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FILED: JANUARY 04, 2023**

Toma Martin appeals from the judgment of sentence imposed following a non-jury trial wherein she was found guilty of possessing a controlled substance, possessing/distributing a small amount of marijuana, and possessing/using drug paraphernalia.[1] For these offenses, Martin was sentenced to an aggregate one-year probation term. On appeal, Martin dually challenges whether the lower court erred by denying her suppression motion and whether there was sufficient evidence to support her convictions. After a thorough review of the record, we affirm.

As cogently summarized by the lower court:

[O]n September 8th of 2019[,] Mt. Lebanon Police

_____

* Retired Senior Judge assigned to the Superior Court.

[1] **See** 35 P.S. § 780-113(a)(16); 35 P.S. § 780-113(a)(31); 35 P.S. § 780-113(a)(32), respectively.

Department received an assistance call from Washington County regarding [a] theft and assault that occurred in Washington County, [that County] being a contiguous and neighboring county with Allegheny[.]

In any event, Office[r] Daniel McBride of the Mt. Lebanon Police Department, who had experience [as] of the date of this offense, approximately ten years['] experience both in Ocean City, Maryland[,] and the last four with Mt. Lebanon[;] he has experience involving hundreds of drug citations and/or investigations including identification and investigation of heroin, marijuana, cocaine, [e]cstasy and MDMA.

As he was working a shift on September 8, 2019[,] he received a call from his superiors and/or dispatch regarding assistance as to the alleged theft and assault in Washington County. He was contacted by [one] Lieutenant Sober regarding that assist[ance] request and information thereto. The report that he received [was] that there were two females who were involved in that theft and assault of a male in Washington County. One of them was [eventually identified as] the [d]efendant in this case, Toma Martin, and the belief was that … Martin was a resident of Mt. Lebanon.

The request to follow up confirmed that … Martin was a resident of Mt. Lebanon living in Apartment 401 at 100 Academy Avenue. There was also information that the vehicle involved in this incident in Washington County was a red Jeep and the object or subject of the theft was clothing, a shoe article, Nike athletic shoes, as well as Suboxone strips [taken] from the victim.

Officer McBride proceeded to 100 Academy Avenue where he was met by a fellow officer, Officer Rutowski. When they arrived at 100 Academy Avenue, which is an apartment building, the officers immediately noticed that there was a red Jeep parked in front of the apartment building and it was registered to a female named Jessica.

The officers looked through the windows of the Jeep and they saw the described pair of black Nike sneakers in the vehicle. They did not notice at that juncture any Suboxone strips. The officers went up to Apartment 401 and knocked on the door in an attempt to contact … Martin or Jessica, the owner of the red Jeep. The officers approached the door, and before they knocked on the

door, they could hear voices inside the apartment, at least one male and at least one female voice inside the apartment. They knocked on the door multiple times over the course of a couple minutes without response.

There was a body cam[era] video introduced as Commonwealth's Exhibit No. 1 that substantially corroborated Police Officer McBride's account of the events. [The officers] heard the voices and muffled sounds inside even after they were knocking. Eventually the door was opened by … Martin and immediately the officers noticed an overwhelming odor of burnt marijuana emanating from the apartment as soon as the door was open.

The officers started to make inquiry of … Martin instructing her to leave the door open for their safety as well as the marijuana emanating from the apartment and also the evanescent nature of the Suboxone strips. … Martin was evasive and actually lied to the police officers about the number … of persons in the apartment indicating that the only other person in the apartment building … was a female. [Martin] was nervously looking over her shoulder during the course of this conversation.

The officers wanted to have the door open to make sure that nothing else was going on at the time in the apartment. They wanted to speak to her about potentially giving her consent to search the apartment and also to make certain that no evidence was destroyed if, in fact, the door was closed as they stood in the hallway. The apartment building itself was a known source of complaints for drug activity over the years, which [was] also a concern for Officer McBride. [These events transpired at] approximately 1:18 in the morning . . . . [Martin] acknowledged during the course of [her] contact [with police officers] that she was not only the leaseholder but the sole occupant [of that specific apartment].

At this juncture there was entry into the apartment and the officers found two individuals in the bedroom. [Therefore,] in addition to … Martin, there were three other persons[] present including Jessica, the owner of the red Jeep [who was also] a potential suspect from the events in Washington County.

The officers removed everyone from the apartment during the course of their protective sweep. There was one bedroom, a

living room-kitchen combination and of course a bathroom and shower. During the protective sweep they noticed a cannister of marijuana in plain view near the mattress in the living room floor. It should be noted that the apartment was very sparsely furnished, and in addition to the bedroom, the mattress on the living room floor was basically the only other furniture.

The protective sweep was completed and they waited for other officers to arrive. Officer McBride began speaking with Jessica, who acknowledged that she was the owner of the vehicle outside. Jessica did indicate that she knew the victim who had called in the complaint. She acknowledged that they could recover the shoes from the vehicle and they did. She also acknowledged that she didn't know if the Suboxone was in there, but she did consent to a search of the vehicle … which was completed and the shoes were retrieved but no Suboxone.

During this period of time … Martin was secured in the hallway outside the apartment with the officers again noting that after the protective sweep that … Martin and Jessica, as well as the two others, were removed from the apartment into the hallway.

The apartment being secured, the quick conversation [with] Jessica and in search of the red Jeep being completed[,] the officer, that is Officer McBride, went on to address the issue of the Suboxone and the marijuana that were still outstanding. It was explained to [Martin] that they were going to get a search warrant for the apartment, but she did have the opportunity to consent. She initially refused to consent, but upon further reflection she decided that she would consent to the search of the apartment. A formal consent to search form was executed by [Martin] which was introduced into evidence as Commonwealth's Exhibit No. 2. The execution included, of course, her signature and that was approximately at 2:00 a.m.

[Ultimately, v]arious items, drug paraphernalia and drugs themselves as charged in the indictment were located in [Martin's] apartment . . . .

Trial Court Opinion, 3/7/22, at 6-9 (quoting the findings of fact and conclusions of law as determined by the suppression court) (most brackets

added).

After being charged, initially, with five drug-related crimes, Martin challenged the bases by which police officers were able to gain access to and search the at-issue apartment without a warrant. Through its subsequent denial of Martin's suppression motion, the court found that

> the court of conduct by the police responding to the request from authorities and Washington County was appropriate and that their conduct and investigation was reasonable and expected. The [c]ourt also [determined] that their conduct, once they were at the residence by knocking trying to secure further information to advance the investigation was appropriate and reasonable, and once the door would be open to the apartment, they were overwhelmed by the odor of burnt marijuana, that the intrusion in this incident for officers' safety and the evanescent nature of both marijuana and unaccounted for Suboxone strips was reasonable [in] not letting … Martin shut the door and as events unfolded and eventually secured her consent during that relatively short period of time[.]

*Id*., at 9-10.

After being found guilty of the three aforementioned offenses by way of non-jury trial, Martin, following sentencing, filed a timely notice of appeal. The relevant parties have complied with their obligations under Pennsylvania Rule of Appellate Procedure 1925, and as such, this matter is ripe for review.

On appeal, Martin challenges:

1. Whether the lower court erred in denying her motion to suppress, as officers executed an illegal search of her resident without a warrant, exception, or probable cause.

2. Whether the evidence was sufficient to support her convictions, as contraband was accessible to other persons in the residence and constructive possession had not been proven.

Appellant's Brief, at 5.

Martin's first issue contests the court's denial of her suppression motion. In this domain, the standard we apply and scope of review we employ are well-settled:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Heidelberg***, 267 A.3d 492, 498-99 (Pa. Super. 2021) (*en banc*) (citation omitted).

Distilled down, Martin contends that, given that police officers had no search warrant that would have allowed them access to the apartment, their initial physical entry into the residence constituted an unconstitutional search that was, too, unsupported by any exception to the Fourth Amendment's warrant requirement. As such, anything recovered following that discrete event was illegally obtained and therefore inadmissible.

In contrast, the Commonwealth asserts that a warrantless search was justified because: (1) there were exigent circumstances associated with what the police officers interpreted as an "imminent destruction of evidence" risk posed by, *inter alia*, the Suboxone contraband, which, after observing the Nike shoes located in the Jeep, were likely to be located on site; (2) officers were

concerned with their safety as they had heard more people in the apartment than Martin had indicated, and relatedly, Martin did not fully present herself at the door to converse with them, acting nervous throughout the interaction; and (3) there was an overwhelming smell of marijuana emanating from the apartment. In addition, Martin signed a form consenting to a search of her apartment. *See* Appellee's Brief, at 20.

The United States Constitution's Fourth Amendment establishes that people have a right to not be the subject of unreasonable searches and seizures. *See* U.S. Const. Amend. 4 Generally, a warrant predicated on probable cause is necessary to effectuate such a search and/or seizure. *See id*.; *see also* Pa. Const. Art. 1, § 8. While exceptions to the warrant requirement exist, they are quite narrow in scope and applicability. As applied here:

> [i]n a private home, searches and seizures without a warrant are presumptively unreasonable[.] Absent probable cause and exigent circumstances, the entry of a home without a warrant is prohibited under the Fourth Amendment. In determining whether exigent circumstances exist, a number of factors are to be considered[:] (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was made peaceably, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified. Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take time to obtain a warrant, or danger to police or other persons inside or outside the dwelling.

Nevertheless, police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.

*Commonwealth v. Bostick*, 958 A.2d 543, 557 (Pa. Super. 2008) (citation omitted) (bracket in original); *see also Commonwealth v. Barr*, 266 A.3d 25, 40 (Pa. 2021) ("[T]he police may conduct a warrantless search of a home if they have probable cause to believe that contraband or evidence of a crime will be found in the home and exigent circumstances are present.") (citation omitted). Effectively, given the fact-specific nature of these types of inquiries, a totality of the circumstances approach is necessary to demonstrate whether an exigency, in fact, exists. *See Commonwealth v. Trahey*, 228 A.3d 520, 530 (Pa. 2020).

Martin spends much of her brief discussing the enactment of the Medical Marijuana Act (MMA), *see* 35 P.S. §§ 10231.101-10231.2110, which permits the possession and use of marijuana under enumerated circumstances for those who are certified and have received a valid identification card. Martin then discusses the MMA's impact on constitutionally permissible searches. Specifically, in *Barr*, our Supreme Court determined, in the context of automobile searches, that "the smell of marijuana may be a factor, but not a stand-alone one, in determining whether the totality of the circumstances established probable cause to permit a police officer to conduct a warrantless search of a vehicle." 266 A.3d at 28. As Martin concedes, *Barr* does not "specifically address warrantless searches for marijuana as it pertains to a

residence[.]" Appellant's Brief, at 17. However, Martin believes that pursuant to **Barr**, officers, prior to conducting a warrantless search of a residence and in the absence of exigent circumstances, should be required to ask a resident's occupants if "they are valid MMA patients immediately upon the smell of marijuana." **Id**. Such an interrogatory did not happen here.

In addition to the MMA-based averments, Martin collates the order of events to demonstrate that there was no exigency that would have allowed the police officers to circumvent the warrant requirement. In particular, Martin describes that: (1) officers arrived in the middle of the night with ambiguously sourced information about crimes that occurred in another county on an unspecified date; (2) officers encountered Martin despite limited facts underpinning her actual involvement in those extra-jurisdictional crimes; (3) despite finding the stolen shoes in a vehicle outside of the residence, no warrant was sought to recover those pieces of clothing; (4) officers did not announce themselves as police officers concurrent with knocking on the apartment's door; and (5) officers, themselves, created a hostile situation when the one officer stuck his foot inside of the apartment's door entrance after Martin had indicated she did not wish to speak with them anymore. **See id**., at 18-19.

Preliminarily, we note that, to the extent Martin argues that marijuana smell provided the *sole* reason for police officer's warrantless entry into the apartment, such a contention is refuted by the record. While the marijuana

smell may have had some relevancy to the officers' operations, the record unambiguously reflects that the officers "believed that if [Martin] would shut [the apartment's] door, any evidence that would be in there could have been destroyed by the time [they] came back with a search warrant." Suppression Hearing, 10/18/21, at 36. Moreover, the police officers "knew that there [were] additional individuals in the apartment. [The police officers] knew that one of them was a male based on hearing him. [They] knew [Martin] was lying about the amount of people in the apartment." *Id*.

More importantly, however, despite highlighting the police officers' actions that seemingly provide credence to her contention that a search warrant was necessary, Martin fails to present *any* authority, either factually similar or by analogy, establishing that the stolen Suboxone strips, which the court explicitly determined to be "evanescent" and potentially destructible, Trial Court Opinion, 3/7/22, at 11, are incapable of establishing an exigency situation. Reading between the lines, the concern was, by both police officers at the time and the court when determining suppression, that these types of strips, when considered in tandem with how events unfolded that evening, were easily capable of being flushed down the toilet or destroyed in some other way. Despite this oversight, Martin appears to ascribe no relevance to those strips whatsoever, exclusively focusing on the other item stolen from Washington County: shoes. *See* Appellant's Brief, at 18 ("Although [o]fficers['] initial investigation *concluded* with their discovery of the vehicle

described in the information received by them and located the essential items (Nike shoes) claimed from the alleged victim . . . .") (emphasis added).

There were clearly two distinguishable items that underpinned *why* the police were at the apartment that evening, and police officers knew, prior to arriving, both Martin's name and that a red Jeep was involved. When they obtained Martin's address and thereafter saw, via plain view, the shoes in that red Jeep, but were unable to see whether there were Suboxone strips in that same location, it would appear reasonable that police officers continued on in their endeavor and attempt to glean, from Martin and/or the Jeep's owner, more information about the Washington County crimes. Upon making this contact at the front door of the apartment, when the police officers attempted to speak with Martin, she acted evasively and recurrently looked over her shoulder. Easily, these types of body movements could have been construed as signals to others in the apartment to destroy the illicitly obtained Suboxone strips, forming the basis of an exigency, or that she was considering a quick break from the interaction with police officers in order to facilitate the same.

With police officers having probable cause to believe that the Suboxone strips, either as contraband or evidence of a crime, would likely be contained within the apartment, established through known police channels specifically identifying Martin and corroborated by the presence of the stolen shoes/red Jeep, and when coupled with both the easily disposed-of nature of those strips and Martin's anxious movements, a warrantless search, based on a totality of

the circumstances analysis, was permissible under those specific circumstances. Furthermore, while *Barr* prohibits vehicular searches based solely on the odor of marijuana, even if we were to apply the same holding to residence searches, because marijuana "remains illegal to smoke," 266 A.3d at 41, the implication that Martin possessed smokable marijuana, at an apartment leased in her name, when considered in the context of her furtive movements and untruthfulness, well-exceeds an exclusive reliance on the smell alone. Marijuana, too, was considered by the lower court to be easily destructible, therefore, in this situation, requiring immediate action – an exigency. Although police officers carry a heavy burden in establishing that no warrant was needed to conduct a search of this nature, without any discussion relevant to one of the principal reasons why the court denied suppression, i.e., the destructibility of contraband/evidence of a crime, there is simply no clear reason to overturn the court's ruling in this regard.

Similarly, other than baldly claiming that no exigencies existed, Martin provides no analytical discussion on anything that is relevant to the protective sweep proffered by the Commonwealth as another exception to the warrant requirement. That sweep stemmed, at least in part, from the additional, yet unacknowledged, individuals heard in the apartment by the police officers, which was juxtaposed against Martin lying to the police as to how many people were there. We note, however, that Martin does not appear to have been arrested at the time of the officers' entrance into the apartment. *See*

***Maryland v. Buie***, 494 U.S. 325, 327 (1990) (defining a protective sweep as "a quick and limited search of premises, incident to *an arrest* and conducted to protect the safety of police officers or others[]") (emphasis added).

Accordingly, primarily due to Martin's lack of direct challenge to the court's explicit findings that: (1) both the Suboxone strips and marijuana were easily capable of destruction; and (2) Martin's affect/lying when coupled with police officers hearing unaccounted-for people in the apartment, we see no strong basis to reverse the suppression court's finding that a warrant was not necessary to enter the apartment. As such, the lower court did not err by denying her motion to suppress.

In Martin's second issue, she avers that the evidence was insufficient to find her guilty of the crimes in which she was convicted. Specifically, Martin challenges whether she, in fact, "possessed" contraband. Despite conceding that she was the leaseholder of the apartment, Martin identifies that she was "not found in possession of any contraband" and "three other people were located inside [of the apartment], two of whom, a male and female, were found alone in the rear bedroom hiding underneath blankets where police recovered the heroin, marijuana, and drug use paraphernalia." Appellant's Brief, at 20. Moreover, one of the people in the apartment "admitted to being a drug user." ***Id***.

As with all sufficiency of evidence claims, we utilize a well-established standard of review:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. ***Commonwealth v. Moreno,*** 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. ***Commonwealth v. Hartzell***, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. ***Moreno***, ***supra*** at 136.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011).

Essentially, Martin's challenge is limited to whether the Commonwealth adequately demonstrated that she constructively possessed the items she was ultimately found guilty of possessing, i.e., drugs and drug paraphernalia.

> Where possession is an element of the offense, the concept of constructive possession is a legal fiction used to prove the element although the individual was not in physical possession of the prohibited item. The evidence must show a nexus between the accused and the item sufficient to infer that the accused had the power and intent to exercise dominion and control over it. Dominion and control means the defendant had the ability to reduce the item to actual possession immediately or was otherwise able to govern its use or disposition as if in physical possession. Constructive possession can be established by inferences derived from the totality of the circumstances.

***Commonwealth v. Peters***, 218 A.3d 1206, 1209 (Pa. 2019) (citations omitted).

First, we note that the argument portion of this issue in Martin's brief spans approximately five sentences, and while she has briefly described what constructive possession is, she has not provided any authority that reflects any kind of analysis as to why, here, constructive possession has not been

proven. Instead, it appears that Martin is implicitly trying to show that others located in the apartment were the ultimate possessors of the illicit items that were recovered.

Second, we highlight the lower court's determination on this issue:

> although other individuals were located in the residence upon the police arriving and conducting their protective sweep and that the items in question were not found on [Martin's] person, the record clearly supported that given [Martin] was the leaseholder, her statements regarding being the only person staying in the residence, and her admission as to what would be found during the search all supported that there was sufficient evidence to show she had access and the ability to exercise dominion and control over the items recovered.

Trial Court Opinion, 3/7/22, at 15 (citation omitted).

At the suppression hearing, one of the police officers stated that Martin had "indicated that there would be some paraphernalia in the apartment. Some needles. Hypodermic syringes." Suppression Hearing, 10/18/21, at 25. In addition, it is unrefuted that Martin was the exclusive leaseholder of the apartment. *See id*., at 26. The items Martin was convicted of possessing were "located in various areas [of the apartment]. Drug paraphernalia was in the kitchen and the bathroom. And the majority of the items that were recovered were from the rear bedroom of the apartment." *Id*.

Given that constructive possession may be inferentially determined predicated on the totality of the circumstances, we see no reversable basis to conclude that Martin, given her unfettered access to her own apartment and the multiple locations the contraband were found, had anything other than the

ability to exercise dominion and control over the items she was ultimately found guilty of possessing. In addition, the fact that others were present in the apartment does not, by itself, shield her from a constructive possession determination. *See, e.g.*, *Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011) (establishing that multiple people may be in constructive possession of the same contraband where that item is in an area that is jointly controlled and equally accessible). Effectively, with contraband being found all over her apartment, in places she inherently or logically accessed daily, there was sufficient circumstantial evidence to conclude that she constructively possessed the items that were recovered. Accordingly, Martin's challenge to the sufficiency of the evidence necessarily fails.

For the reasons outlined, we deny both of Martin's claims and affirm her judgment of sentence.

Judgment of sentence affirmed.

Judge Olson joins this memorandum.

Judge Dubow concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/04/2023